Jay M. DEAN, Sr., Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 92–193.

Supreme Court of Wyoming.

Dec. 16, 1993.

602

Wyoming Public Defender Program, Lee E. Christian, Fort Collins, CO, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Larry M. Donovan, Sr. Asst. Atty. Gen., Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Appellant Jay Dean, Sr. appeals from a jury verdict finding him guilty of one count of wrongful taking or disposing of property; one count of removing, changing, altering, or obliterating a vehicle identification number; and one count each of conspiracy to commit those same acts. Appellant, through appellate counsel, raises issues concerning the introduction of prior bad acts evidence, admission of evidence gained from allegedly improper searches, prosecutorial misconduct, admission of hearsay and irrelevant evidence, and denial of a speedy trial. In his pro se brief, appellant additionally asserts he was denied effective assistance of trial counsel and the right to defend in person and by counsel.

We reverse and remand for a new trial.

## ISSUES

In his brief prepared by counsel, appellant presents these issues:

1. Did the Trial Court err in allowing the introduction of evidence concerning the prior bad acts of the Appellant?

2. Was evidence gained from an illegal search and seizure improperly admitted?

3. Was Appellant denied a fair trial by numerous instances of prosecutorial misconduct?

4. Was the admission of excessive hearsay and irrelevant evidence error?

5. Did the prosecution's violation of discovery orders lead to the use of evidence that should have been excluded?

6. Did the Trial Court err when it failed to dismiss on the grounds of denial of speedy trial?

Pro se, appellant raises the following additional issues:

1. Was Appellant denied effective assistance of trial counsel?

2. Was Appellant denied the right to defend in person and by counsel?

3. Did both the trial court and defense fail to advise Appellant of his constitutional rights, and fail to allow Appellant the opportunity to assert his constitutional rights?

Responding to appellant's brief prepared by counsel, the state rephrased the issues in this way:

I. Did the trial court correctly allow introduction of evidence concerning prior bad acts of the appellant?

II. Was evidence obtained as a result of an illegal search and seizure admitted into evidence against appellant?

III. Was appellant's right to a fair trial violated as a result of prosecutorial misconduct?

IV. Was appellant denied a fair trial as the result of the introduction of excessive hearsay, irrelevant evidence, and evidence produced in violation of the court's discovery order?

V. Was the appellant denied his right to a speedy trial?

The state responded to appellant's pro se brief with these issues:

I. Was appellant denied the effective assistance of trial counsel?

II. Was appellant denied the right to defend in person and by counsel?

III. Did the trial court and defense counsel fail to provide appellant the opportunity to assert his constitutional rights?

## FACTS

This case presents us with the alleged involvement of appellant and his son, Jay Dean, Jr., in a conspiracy to steal vehicles, alter their vehicle identification numbers (VIN's), and subsequently resell the vehicles. Three vehicles were involved: a 1989 Ford Super Duty flat bed truck; a 1988 Ford van stolen from a dealership in Fort Collins, Col-

orado; and a 1986 Ford van stolen from a Ford dealership in LaPorte, Indiana.

The investigation of the alleged conspiracy began in September, 1990, following a hit and run collision involving Jay Dean, Jr. when he hit several vehicles and then crashed his 1985 F350 Ford truck into a building. After the accident, the truck was towed and impounded. The towing company owner towed the truck to his shop and then examined the truck to ascertain its ownership. He found the truck was registered to Jay Dean (no designation of Jr. or Sr.) and, due to certain characteristics of the truck, determined the truck could not be a 1985 Ford truck. He alerted the authorities of his suspicions. Close inspection revealed the truck was a 1989 Ford truck and the truck's VIN's had been altered to disguise the vehicle as a 1985 F350 Ford.

A Wyoming Highway Patrol Officer executed a search warrant on the truck and discovered a slide hammer and a modified screwdriver, tools commonly used in the theft of vehicles. The officer also found other incriminating items including: numerous titles for other vehicles, all in the name of Jay Dean (again no designation of Jr. or Sr.); a VIN plate, name plates, and number plates for a Saab motor vehicle; and several roset rivets, specialized fasteners used to affix VIN plates to vehicles.

Investigation of the titles found in the impounded truck led authorities to a 1982 Ford van which had been transferred from Jay Dean to Clyde Young, a man from Casper, Wyoming. Mr. Young reported purchasing the van from appellant and his son for $5,500. Upon inspection, investigators determined the van was not a 1982 Ford van, but rather a 1988 Ford van which had been stolen one year earlier from a Ford dealership in Fort Collins, Colorado. The van's VIN's had been altered to convert the van into a 1982 Ford van.

On October 25, 1990, a fire destroyed the garage where appellant and his son purportedly stored and repaired vehicles. After the fire was extinguished the garage was inspected, and the charred remains of a 1986 van were discovered. The van was identified as one stolen from a Ford dealership in LaPorte, Indiana.

On November 13, 1990, a criminal complaint was filed, and a warrant was issued for appellant's arrest. Appellant first appeared in Wyoming court on July 29, 1991; it is not clear from the record what caused the delay between the issuance of the warrant and appellant's first appearance—it appears appellant was living in Arizona at the time the warrant issued, and that caused the delay. On August 20, 1991, a preliminary hearing was held, after which appellant was bound over to district court. Appellant was arraigned on August 30, 1991, and he entered a plea of not guilty to all charges.

On March 4, 1992, appellant filed a motion in limine requesting exclusion of evidence including certain hearsay testimony and appellant's 1983 conviction in federal court for alteration of vehicle identification numbers. Appellant also filed two motions to suppress on March 4, 1992. The motions sought suppression of evidence seized in the searches of the Ford truck and the burned building and property.

The record contains no ruling on appellant's motions in limine and motions to suppress, but appellant renewed his objections at trial. The district court overruled appellant's objections and admitted the evidence seized in the searches of the Ford truck and the burned building and property. The district court also overruled appellant's objections to introduction of prior bad acts evidence, although without articulating a basis for its ruling or specifying the particular purpose for which the evidence was being admitted.

Appellant's trial began on March 9, 1992, and on March 13, 1992, the jury returned a verdict finding appellant guilty of all four counts charged. He was sentenced to serve not less than six nor more than ten years on each count, the sentences to run concurrently.

## DISCUSSION

### 1. Prior Bad Acts Evidence

We address first the issue whether the district court erred in admitting evidence of

appellant's 1983 federal conviction for alteration of vehicle identification numbers. Appellant contends that the evidence referring to his prior conviction was inadmissible under Wyo.R.Evid. 404(b), which reads in pertinent part:

> *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We recently commented upon the rationale for restricting evidence of other crimes or "bad acts," and when that rationale demands exclusion of such evidence. We noted,

> [i]ts intent is to avoid a demand that an accused defend acts of misconduct other than those charged in the indictment or information and to avoid potential confusion by members of the jury in addressing the issues of the case. The rule demands convictions are to be founded in those facts relevant to the crime or crimes charged. If the thrust of evidence of prior bad acts is only to demonstrate the defendant has a disposition to commit crimes, the evidence should be excluded.

*Wehr v. State,* 841 P.2d 104, 108 (Wyo.1992).

■ We afford great deference to the trial court's determination of admissibility of prior bad acts evidence. As long as a legitimate basis exists for the trial judge's ruling, we will not find an abuse of discretion. *Wehr,* 841 P.2d at 108; *Longfellow v. State,* 803 P.2d 848, 851 (Wyo.1990). However, this discretion is not without limits. This court has adopted a five-part test to determine admissibility of Rule 404(b) evidence. The factors we consider are

1. The extent to which the prosecution plainly, clearly, and convincingly can prove the other similar crimes;

2. The remoteness in time of those crimes from the charged offense;

3. The extent to which the evidence of other crimes is introduced for a purpose sanctioned by W.R.E. 404(b);

4. The extent to which the element of the charged offense, that the evidence is introduced to prove, is actually at issue;

5. The extent to which the prosecution has a substantial need for the probative value of the evidence of the other crimes.

*Longfellow,* 803 P.2d at 851 (*citing, Garcia v. State,* 777 P.2d 1091, 1096 (Wyo.1989) and *Bishop v. State,* 687 P.2d 242, 246 (Wyo. 1984), *cert. denied,* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985)). Each of these five factors need not be satisfied to justify admission of evidence under Rule 404(b); the trial court has broad discretion in balancing the factors. *Frenzel v. State,* 849 P.2d 741, 752 (Wyo.1993); *Longfellow,* 803 P.2d at 851; *Coleman v. State,* 741 P.2d 99, 104 (Wyo. 1987). However, in most instances, each of the five factors will be present when evidence of other crimes is properly admissible. *Longfellow,* 803 P.2d at 851; *Coleman,* 741 P.2d at 105. This is true because, aside from the third factor which clearly finds its origin in Rule 404(b), each of the factors stems from the fundamental requirement that evidence be relevant. Evidence must be material and have probative value; each of the five factors tests the fulfillment of these conditions.

■ Lastly, if, after employing the analysis outlined above, the trial court finds evidence of prior bad acts relevant, it must determine whether the probative value of the evidence outweighs the danger of unfair prejudice or confusion of issues created by its introduction. Wyo.R.Evid. 403; *Wehr,* 841 P.2d at 109; *Coleman,* 741 P.2d at 105.

Having outlined the hurdles that evidence of other crimes must clear, we turn to the prior bad acts evidence admitted in this case. At trial, the state called as a witness Kasper Landman, an agent from the State Division of Criminal Investigation. Mr. Landman had investigated the activities of appellant which led to his 1983 conviction for alteration of vehicle identification numbers. Mr. Landman provided testimony concerning a statement he took from appellant on November 24, 1982. He related the entire subject matter of that conversation, which included a detailed description of appellant's prior "chop shop" operation—where it operated, who was

involved, and how the vehicles were stolen and prepared for resale.

At trial, the state contended it was offering the evidence to prove *modus operandi* and identity. However, on appeal the state chose a different approach, arguing the evidence was introduced to show knowledge.[1] We will address first the purpose advanced by the state at trial, to show identity.

Identity was an issue at trial. Appellant claimed he was not involved in the conspiracy, that his son committed the crimes. In other words appellant is claiming, "it wasn't me, it was my son." Additionally, the titles to the vehicles in question were in the name of Jay Dean, with no designation of Jr. or Sr., and questions arose concerning who had possession of and sold the vehicles and who was operating the garage destroyed by fire.

 We have held that evidence of prior bad acts may be admitted for the purpose of proving identity. *See, e.g., Pena v. State,* 780 P.2d 316, 322 (Wyo.1989); *Justice v. State,* 775 P.2d 1002, 1008–09 (Wyo.1989); *Marker v. State,* 748 P.2d 295, 297 (Wyo.1988); *Hopkinson v. State,* 632 P.2d 79 (Wyo.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). In *Pena,* we cited with approval a Fifth Circuit Court of Appeals decision outlining the requirements evidence of other crimes must satisfy to be admissible to prove identity from *modus operandi. Pena,* 780 P.2d at 322. We agreed with that court's position:

> The probity of evidence of other crimes where introduced for this purpose depends upon both the uniqueness of the *modus operandi* and the degree of similarity between the charged crime and the uncharged crime. Of course, it is not necessary that the charged crime and the other crimes be identical in every detail. But they must possess a common feature or features that make it very likely that the unknown perpetrator of the charged crime and the known perpetrator of the uncharged crime are the same person. The more unique each of the common features

is, the smaller the number that is required for the probative value of the evidence to be significant. But a number of common features of lesser uniqueness, although insufficient to generate a strong inference of identity if considered separately, may be of significant probative value when considered together.

*Pena,* 780 P.2d at 322 (*quoting United States v. Myers,* 550 F.2d 1036, 1045 (5th Cir.1977)) (citation omitted). For evidence of other crimes to be admissible to prove identity, the inference of identity flowing from it must be extremely strong. *Myers,* 550 F.2d at 1045. To prove identity from *modus operandi,* the crimes must "bear such peculiar, unique, or bizarre similarities as to mark them as the handiwork of the same individual." *Myers,* 550 F.2d at 1045.

In *Pena,* we concluded the evidence of prior wrongs was relevant to the issue of identity and held it was therefore properly admitted. Pena was charged with assaulting a police officer, and we found that while his previous altercations with police officers were not uniquely similar to his current charge, when considered together, they created an irrefutable inference of identity, suggesting strongly that Pena was the assailant in the charged crime. *Pena,* 780 P.2d at 323. Our determination that, when confronted by police officers, Pena consistently intended to be hostile and uncooperative also influenced our decision. From that intent we were able to infer identity. *Pena,* 780 P.2d at 318–21.

 However, in this case, evidence of appellant's prior conviction sheds no light on the identity of the perpetrator without relying on the impermissible inference that appellant did it once; therefore, he must have done it this time. The similarities between appellant's 1982 "chop-shop" operation and the crimes with which he is currently charged lack distinction. The similarities that exist, such as the techniques used to steal the vehicles, are common components of this type of crime; they are not unique and do not constitute appellant's signature.

---

1. In its appellate brief, the state argues the prior bad act evidence was introduced to show opportunity, intent, preparation, motive, plan, knowledge, identity, and absence of mistake. However the state offers argument and authority for only one of those purposes, knowledge, and we therefore will address only that purpose, in addition to the purpose offered at trial.

■ Because evidence of other crimes is not admissible for the purpose of showing that defendant has a criminal disposition and acted in accordance with that disposition, we conclude the evidence of appellant's prior conviction was improperly admitted for the purpose of proving identity.

We turn now to the state's contention that the prior bad acts evidence was admissible to show knowledge. The state contends the evidence was relevant because the crimes with which appellant was charged "are not run of the mill crimes" and "[t]hese crimes take special knowledge, abilities, tools, and facilities."

■ However, knowledge of how to commit the crime is not the knowledge Rule 404(b) permits the admission of prior bad acts to prove. The "knowledge" referred to in Rule 404(b) is "guilty knowledge" or a guilty mind. *See, e.g., Virgilio v. State,* 834 P.2d 1125, 1128 (Wyo.1992); *Schwenke v. State,* 768 P.2d 1031, 1038 (Wyo.1989); *Trujillo v. State,* 750 P.2d 1334, 1337 (Wyo.1988). *See also, United States v. Sutton,* 801 F.2d 1346, 1360–62 (D.C.Cir.1986); *State v. Mendiola,* 360 N.W.2d 780, 782 (Iowa 1985); *State v. Weldon,* 314 N.C. 401, 333 S.E.2d 701, 704 (1985). In this case, the knowledge, which Rule 404(b) would permit introduction of prior bad acts to prove, is knowledge that the vehicles in question were stolen, or knowledge the VIN's on the vehicles had been altered.

This definition of knowledge is consistent with our requirement outlined above, in our five-part test, that the element of the charged offense that the evidence is introduced to prove actually be in issue. While evidence that appellant had the requisite knowledge to perform the crime may help persuade the jury of appellant's guilt, it is not an element of the offense, nor is it a fact that the state must prove. What the state was required to prove was that appellant knew the vehicles were stolen and that their VIN's had been altered.

We can discern no way in which evidence of appellant's prior conviction tends to show appellant knew the vehicles in question were stolen and that their VIN's had been altered. That appellant had stolen vehicles in the past

does not mean that he would know a stolen vehicle by sight or know that its VIN's had been altered. The state had to run NCIC checks and consult experts to thoroughly inspect the vehicles to make those same determinations.

We therefore conclude, since no link exists between appellant's prior conviction and the knowledge required to prove him guilty of the current charges against him, that evidence of the prior conviction was irrelevant and not properly admitted under Wyo. R.Evid. 404(b). Because the evidence of appellant's prior conviction was relevant for neither the purpose offered at trial nor the purpose suggested on appeal, we hold the district court abused its discretion and erred in admitting the evidence.

■ Having concluded the district court erred in admitting the evidence of appellant's prior conviction, we must next determine whether that error was prejudicial. The improper admission of prior bad acts evidence does not mandate reversal of a conviction in all instances. *Bishop,* 687 P.2d at 246. To constitute reversible error, the error must be harmful, and for an error to be regarded as harmful a reasonable possibility must exist that in the absence of the error, the verdict might have been more favorable to the defendant. *Smethurst v. State,* 756 P.2d 196, 199 (Wyo.1988); *Bishop,* 687 P.2d at 247.

■ After reviewing the record in this case, we find appellant's prior conviction to have been presented in a particularly prejudicial fashion. First, his prior actions were introduced in extensive detail. We consider it likely that the risk the jury will draw impermissible inferences from the prior bad acts evidence increases when that evidence is offered in greater detail, particularly when similar crimes are involved. *See, State v. Brunson,* 132 N.J. 377, 625 A.2d 1085, 1088 (1993) (discussing the "sanitization" of prior bad acts evidence to reduce the risk of impermissible use by the jury); *see also, Sutton,* 801 F.2d at 1362 (commending the trial court for its efforts to avoid unfair prejudice by permitting "no significant discussion or inflammatory testimony about the actions un-

derlying [the defendant's] prior convictions.").

■ In *Brunson,* the Supreme Court of New Jersey adopted a rule requiring that certain prior crimes be sanitized when admitted into evidence. *Brunson* concerned use of prior convictions for impeachment purposes, and the New Jersey court held

> that in those cases in which a testifying defendant previously has been convicted of a crime that is the same or similar to the offense charged, the State may introduce evidence of the defendant's prior conviction limited to the degree of the crime and the date of the offense but excluding any evidence of the specific crime of which defendant was convicted.

*Brunson,* 625 A.2d at 1092. Use of prior convictions for impeachment purposes differs from use of such evidence for the purposes provided in Rule 404(b). While use of the fact that a defendant was previously convicted of a felony may be helpful for impeaching that defendant's credibility, it probably will not be sufficient to establish identity, motive, or intent, or helpful for any of the other purposes outlined in Rule 404(b). Thus, we recognize that when introduced for Rule 404(b) purposes, more detail of the prior wrong may be required. The amount of detail permitted is of course within the trial court's discretion; however, we caution that as the amount of detail permitted increases, the likelihood of prejudice also increases, and, correspondingly, the likelihood we will find an abuse of discretion and reversible error increases.

At trial, the district court permitted the state to question its witness on many more details of appellant's crime than were potentially relevant for the purposes for which the state sought the evidence's introduction. The witness' testimony included the names of all the parties involved in appellant's prior crime, the number of vehicles involved, the eight states involved, as well as the details of the operation including appellant's techniques for stealing vehicles and the amount of money appellant made in his prior illegal operation. Given the dangerously prejudicial nature of prior bad acts evidence and the limited purposes for which it may be used, we find the excessive detail provided in this testimony unwarranted.

Furthermore, once admitted, the evidence of appellant's prior conviction was referred to numerous times by the state and its witnesses. We conclude that a reasonable possibility exists that, absent the improperly admitted evidence of appellant's prior involvement in a similar crime, the jury's verdict may have been more favorable to appellant. For this reason, the decision of the trial court must be reversed, and appellant is entitled to a new trial.

■ After reviewing the admission of prior bad acts evidence in this case, and in numerous other cases, we perceive the need for a uniform procedure, to be followed in all cases in which the state proposes to introduce such evidence. In the future, when the state wishes to introduce evidence of a defendant's prior bad acts, the state carries the initial burden of demonstrating the admissibility of the evidence in the context of the five-part test we outlined above. The state must articulate which Rule 404(b) or other relevant purpose the evidence is specifically being offered to serve, and how the evidence is relevant for that purpose. The defendant must then respond with its arguments why the evidence should not be admitted, addressing issues of relevancy and Rule 403 concerns.

■ The trial court must then articulate its findings of relevancy and how it weighed probative value against the countervailing factors.[2] If the trial court determines

---

**2.** In determining the probative value of prior bad acts evidence, the trial court should consider the following factors:

 1. How clear is it that the defendant committed the prior bad act?

 2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?

 3. Is other evidence available?

 4. Is the evidence unnecessarily cumulative?

 5. How much time has elapsed between the charged crime and the prior bad act?

*See* John E.B. Myers, *Uncharged Misconduct Evidence in Child Abuse Litigation,* 1988 Utah L.Rev. 497, 564–65 (1988).

the evidence should be admitted, it must identify the specific purpose for which the evidence is being admitted.

We recommended this procedure in earlier cases to provide this court with a proper record from which it may pursue the question of any abuse of discretion by the trial court in admitting evidence of prior wrongs. *Coleman,* 741 p.2d at 102–05; *Elliott v. State,* 600 P.2d 1044, 1049 (Wyo.1979). We now hold this procedure is mandatory and must be followed, both to provide a sufficient record for our review and to ensure every effort is made to protect a defendant from the unfair prejudice which often accompanies evidence of prior wrongs.

■ We further hold that, if a defendant requests a limiting instruction, that instruction must inform the jury of the specific purpose for which they may consider the evidence of the prior wrongs, and what they may not infer from the evidence. We find this requirement compelled by the dangerously prejudicial nature of prior bad acts evidence. As noted by one New Jersey Supreme Court Justice:

> Juries in our system of criminal justice, however, are not charged with determining a defendant's guilt based on the defendant's propensity to commit crime. In fact, they are expressly prohibited from doing so. Nevertheless, the overwhelming consensus of empirical studies on the use of prior-crimes evidence for impeachment

purposes confirms a point made by one of the researchers in Kalvin and Zeisel's landmark study, *The American Jury:* that juries exhibit an

> "almost universal inability and/or unwillingness either to understand or follow the court's instructions on the use of defendant's prior criminal record for impeachment purposes. The jurors almost universally used defendant's record to conclude that he was a bad man and hence was more likely than not guilty of the crime for which he was then standing trial."

*Brunson,* 625 A.2d at 1100 (Justice Handler, concurring in part and dissenting in part). The same danger adheres when evidence of prior crimes is introduced for Rule 404(b) purposes, and an instruction merely reciting Rule 404(b) is insufficient to overcome that danger.

■ Lastly, when this court reviews the admission of prior bad acts evidence, it shall review only the specific purpose(s) for which the trial court permitted the evidence to be introduced. The proponent of the bad acts evidence will not be allowed to advance one reason at trial for admitting the evidence, and then an alternative reason on appeal. While on some rulings we have been willing to uphold a trial court's exercise of discretion when supported by any basis demonstrated in the record, we will not extend this practice to rulings on prior bad acts evidence. To avoid unfair prejudice, evidence of prior

---

Evidence is unfairly prejudicial if it tempts the jury to decide the case on an improper basis. *State v. Mayfield,* 302 Or. 631, 733 P.2d 438, 446 (1987). In balancing against its probative value the unfair prejudice created by the evidence, the trial court should consider the extent to which the evidence distracts the jury from the central question whether the defendant committed the charged crime. *Mayfield,* 733 P.2d at 447. The trial court should weigh these additional factors against the probative value of the evidence:
 1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.
 2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.
 3. The similarity between the charged crime and the prior bad act. The more similar the

acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.
 4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.
 5. The comparative relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).
 6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.
*See* Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 8:24 at 49–50 (1992).

wrongs is introduced for limited purposes only, and to review its admission on an entirely different basis would be unfair to the defendant who must confront the evidence as it is presented at trial.[3]

Having concluded appellant is entitled to a new trial, we will next briefly address appellant's other contentions.

## 2. *Stolen Airplane Evidence*

At trial, during its cross-examination of appellant, the state questioned appellant extensively about an allegedly stolen airplane appellant owned. The state asserted, at trial and on appeal, that it was asking the questions to impeach appellant's credibility, by discrediting appellant's statement that he could not afford an attorney. The state contends the airplane is valued at $40,000, and, therefore, demonstrates appellant falsely reported his income and assets.

However, the state did not stop at asking appellant whether he owned an airplane and whether that airplane was in fact worth $40,-000. The prosecutor first declared the air-

plane was stolen from Fort Collins, Colorado, and then questioned appellant regarding the title to the airplane, the identification numbers on the airplane, the criminal history of the persons from whom appellant acquired the airplane, and finally asked questions based on hearsay that the Arizona police had been informed the papers for the airplane had been stolen.

This line of questioning was clearly improper; it is irrelevant and highly prejudicial. On retrial, the state's questions regarding the airplane are restricted to matters properly impeaching.

## 3. *Prosecutorial Misconduct*

Appellant asserts he was denied a fair trial by numerous instances of prosecutorial misconduct. Because we have granted appellant a new trial, we need not address whether the prosecutor's misconduct actually prejudiced appellant, but we will address the conduct of the prosecutor which we do not want repeated at the new trial.

**3.** In his treatise on uncharged misconduct evidence, Professor Imwinkelried discusses a prosecutor's ability to raise on appeal theories of relevance other than those specified at trial.
 **§ 9:72.—Prosecutor's Ability To Raise Theories of Logical Relevance Other Than Those Specified in Trial Court.**
 If the courts were true believers in logical symmetry, on appeal they would restrict the prosecutor to the theories of independent logical relevance cited in the trial court, just as they limit the defendant to the objections raised in the trial court. However, logical symmetry breaks down in this area of law. Given the interests in judicial economy and the finality of judgment, some appellate courts give the prosecutor much more latitude than the defense. This issue has produced a three-way split of authority.
 One view is that even when the theory of logical relevance cited in the trial court is not sustainable on appeal, the judgment of conviction is sustainable so long as the uncharged misconduct was admissible on any theory of independent logical relevance. Suppose, for example, that the trial judge admitted the evidence to prove the defendant's identity. The appellate court might conclude that the modus operandi was not distinctive enough to admit the evidence on identity, but the court could uphold the conviction on the ground that the evidence would have been admissible to show intent. Some courts allow the prosecutor to shift theories on appeal so long as the new

theory was one of the theories mentioned in the trial judge's limiting instruction to the jury. One commentator has suggested that although the prosecutor should be permitted to shift to any other theory tenable under Rule 404(b) the prosecutor should not be permitted to abandon a 404(b) theory and urge a Rule 609 conviction-impeachment theory on appeal.
 Another view is that the prosecutor is not strictly limited to the theory of logical relevance urged below; but that if the prosecutor attempts to shift, there will be less deference to the trial court ruling. The appellate court will make a more searching inquiry when the prosecutor switches theories on appeal.
 The final view is that the prosecutor may not shift theories on appeal. The courts following this view emphasize that it is unfair to the defendant to allow the prosecution to develop a new theory of admissibility on appeal. Moreover, this view gives the trial participants, notably the prosecutor and judge, the greatest incentive to handle the uncharged misconduct issue correctly in the first instance. If the prosecutor and judge know that the appellate court will strain to invent a new theory to sustain the trial court ruling, they have less motivation to administer the law correctly in the trial court.
(Footnotes omitted).
 We find the reasoning supporting this final view most persuasive and, therefore, adopt that approach.

A prosecuting attorney is a representative of the state, and his duty is to seek justice, not merely to secure a conviction. *Schmunk v. State,* 714 P.2d 724, 743 (Wyo.1986); *Jones v. State,* 580 P.2d 1150, 1154 (Wyo.1978). In *Schmunk,* we referred to a United States Supreme Court opinion which held:

> [A prosecutor] may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Schmunk,* 714 P.2d at 743 (*quoting Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). A prosecutor may not ask questions or make statements which the facts in evidence do not support. *Armstrong v. State,* 826 P.2d 1106, 1115 (Wyo.1992).

Against this backdrop, we consider the alleged instances of prosecutorial misconduct. We have already addressed appellant's first contention of misconduct, the prosecutor's reference to the stolen airplane. We turn, then, to the second cited instance of misconduct which occurred when the prosecutor alleged in a question to appellant that "in fact you threatened to burn them out?"

This threat was allegedly made to Jim and Emma Brown, and stemmed from an argument that did not concern the charges against appellant. Emma Brown had testified earlier in the trial, and the prosecutor had not asked her about the threat nor had she volunteered any information concerning the threat. We presume the prosecutor did not ask about the threat because he knew that it was an irrelevant prior bad act. Thus,

the alleged threat was not a fact in evidence and was not admissible, and it was therefore improper for the prosecutor to question appellant about the incident. We trust this line of questioning will not be pursued on retrial unless the prosecutor provides a proper basis for introduction of the threat.

Appellant asserts as the next instance of misconduct the prosecutor's calling of a witness to testify regarding appellant's alleged forcible return to Wyoming. The trial court sustained appellant's objections to that line of questioning. Thus, we need not address whether the questions were improper, but rather whether it was improper for the prosecutor to respond, after the trial court sustained appellant's objections, with the remark: "I think interstate flight to avoid prosecution is always relevant." This remark was clearly improper, and especially so, since the record contains no evidence to support the accusation. We trust improper remarks of this nature will not recur at the new trial.

We find no merit in appellant's contention that the prosecutor acted improperly in withdrawing its grant of immunity to Jay Dean, Jr. Appellant fails to demonstrate how the state gained a tactical advantage by withdrawing the grant, and appellant has no standing to contest the state's grant or withdrawal of immunity to a state's witness.

We also find appellant was not prejudiced by the introduction of state exhibits presented to appellant after the cutoff date for discovery. Appellant received the exhibits prior to trial, and certainly has notice of the exhibits for the new trial. We find no prosecutorial misconduct in appellant's remaining contentions, but remind the prosecutor his duty is not to obtain a conviction at any cost; he must also ensure appellant receives a fair trial. *Valerio v. State,* 527 P.2d 154, 156 (Wyo.1974).

*4. Hearsay Evidence*

*Computer Records*

Through the testimony of a Ford dealership service director from Casper, the state introduced computer generated data

compilations comparing particular VIN's with the manufacturer's record of the model/type of vehicle that the VIN was attached to at the factory. The witness testified that he consulted the data bank frequently for business purposes, but the compilation used at trial was not prepared in the ordinary course of business, but rather at the state's request. We agree with appellant that this data compilation is hearsay and does not fall within the business records exception, as it was not prepared in the ordinary course of business. However, the evidence qualifies for admission under Wyo.R.Evid. 803(24), and this matter may be resolved by the state's providing the notice required by Rule 803(24) before appellant's new trial.

### Business Records from Blount Auto Sales

Appellant objected on hearsay grounds to the admission of state's exhibits 33, 34, and 44. These were business records from Blount Auto Sales in Indiana, and consisted of an official odometer statement, a buyer's guide, and two sales receipts. We find these exhibits were not hearsay because they were not offered for the truth of the matters asserted within the documents. Exhibit 44 was offered in conjunction with the handwriting expert's testimony regarding appellant's signature. Exhibits 33 and 34 were offered to demonstrate appellant's connection with a particular vehicle, not to establish the mileage on that vehicle when it was purchased, and not to demonstrate the warranty or condition of the vehicle.

We find no prejudice in appellant's remaining contentions of improperly admitted hearsay.

### 5. Improper Searches of Ford Truck and Burned Property

■ A person complaining of an illegal search must demonstrate a legitimate expectation of privacy in the searched property. *MacLaird v. State*, 718 P.2d 41, 44 (Wyo.1986); *Pellatz v. State*, 711 P.2d 1138, 1141 (Wyo.1986). To demonstrate a legitimate expectation of privacy, the claimant must show both an actual subjective expectation of privacy and a reasonable expectation of privacy that society is prepared to recog-

nize. *Pellatz*, 711 P.2d at 1141. The factors to consider in determining whether an individual possesses a reasonable expectation of privacy include:

(1) the precautions taken in order to maintain one's privacy; (2) the likely intent of the drafters of the United States and Wyoming Constitutions; (3) the property rights a claimant possesses in the invaded area; (4) the legitimacy of the individual's possession of or presence in the property which was searched or seized.

*Pellatz*, 711 P.2d at 1141.

Appellant demonstrated no reasonable expectation of privacy in either the burned garage and property or the Ford truck. He did not own or lease the burned garage, and he testified he had no ownership interest in the vans destroyed by the fire. Furthermore, appellant left the scene of the fire while the police and fire officials were still at the scene, and he never attempted to stop the search of the premises, both actions demonstrating his lack of a subjective expectation of privacy.

We also find appellant demonstrated no reasonable expectation of privacy in the Ford truck which was searched after its impoundment. Appellant claimed no ownership interest in the truck, and, in fact, claimed he had never even seen the truck before viewing photographs taken at the impoundment lot.

Because appellant possessed no legitimate expectation of privacy in either the burned property or the Ford truck, he had no standing to contest the searches. We therefore conclude that the evidence obtained in those searches was properly admitted at trial.

### 6. Denial of Speedy Trial

■ Two hundred and seven days elapsed between the filing of the information against appellant and the start of his trial. Former Rule 204 of the Uniform Rules for the District Courts of the State of Wyoming required that a trial commence within 120 days of the filing of the information. However, we have held that the 120-day requirement was advisory in nature, and only one factor to be considered in the balancing test. *Whiteplume v. State*, 841 P.2d 1332, 1335

(Wyo.1992). The balancing test requires that we consider and weigh "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of [his] right; and (4) the prejudice to the defendant." *Whiteplume*, 841 P.2d at 1335 (*quoting, Osborne v. State*, 806 P.2d 272, 277 (Wyo.1991)).

■ After reviewing the record, we find meritless appellant's claim that he was denied a speedy trial. First, most of the delay appeared to be caused by an overcrowded court docket, as opposed to any deliberate maneuvering by the state. At least some of the delay can also be attributed to appellant's refusal to submit a handwriting exemplar requested by the state. Additionally, appellant did not raise the objection until four days before his trial, or 203 days after the information was filed. Most importantly, appellant has failed to demonstrate how the delay prejudiced his case.

We reject appellant's claim he was denied his right to a speedy trial.

### 7. *Appellant's Pro Se Issues*

#### *Ineffective Assistance of Counsel*

■ In reviewing claims of ineffective assistance of counsel, we must determine whether the "trial counsel's acts or omissions were outside the wide range of professionally competent assistance." *Frias v. State*, 722 P.2d 135, 145 (Wyo.1986). To make this showing, appellant must satisfy the requirements of the following two-part test:

> [F]irst * * * that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed [appellant] by the Sixth Amendment. Second, [appellant] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable.

*Frias*, 722 P.2d at 145 (*quoting, Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)).

Appellant failed to demonstrate any error rising to this level, and we therefore reject his claim of ineffective assistance of counsel.

#### *Denial of Right to Defend in Person and Assert Constitutional Rights*

We find these claims of appellant to be completely without merit. Appellant was present at his arraignment and throughout the duration of his trial. Wyo.R.Crim.P. 43 provides that a defendant's presence is not required during conferences on legal questions, which is all appellant missed when he was not invited to attend conferences in chambers and at the bench.

### CONCLUSION

Because appellant was prejudiced by the erroneous admission of prior bad acts evidence, we reverse and remand for a new trial.

THOMAS, Justice, dissenting, with whom MACY, Chief Justice, joins.

I am compelled to dissent from the resolution of this case by the majority. Insofar as the majority opinion finds no error, I am in complete accord with what it says. I am satisfied, however, that no error occurred in this case with respect to the admission of the prior conviction under WYO.R.EVID. 404(b) and, while subject to criticism, the evidence relating to the airplane would not, in and of itself, justify a reversal. Consequently, I would affirm Dean's conviction.

It seems to me the majority opinion correctly identifies the conundrum in this case. I quote from the majority opinion:

> Identity was an issue at trial. Appellant claimed he was not involved in the conspiracy, that his son committed the crimes. In other words appellant is claiming, "it wasn't me, it was my son."

Op. at 607.

The facts in this case point to both the actions of Jay Dean, Sr. and Jay Dean, Jr.

Many of the documents, including car titles, list simply the name "Jay Dean," without specifying Jr. or Sr. The switching of vehicle identification plates could have been accomplished by either of these individuals. This is also true with respect to the removal

of the embossed identification numbers that were ground off of the vehicles. One individual who dealt with the Deans in the purchase of a Ford van was confused about who owned the van and who was selling the van. Indeed, the situation may be described as one in which, if Jay Dean, Sr. and Jay Dean, Jr. were tried in separate trials and each blamed the criminal acts on the other, both might be acquitted.

The shortfall I perceive with the majority approach is that, instead of properly applying WYO.R.EVID. 404(b) to this situation, there is a failure to discern the distinction between a situation in which identity must be solved in the context of a universal population, which involves a so-called "signature crime," and the situation presented in this case in which it is clear that the issue of identity and, therefore, culpability, involved simply a selection between two people, Jay Dean, Sr., and Jay Dean, Jr. This is an entirely different situation from that presented in *Pena v. State*, 780 P.2d 316 (Wyo.1989), where the issue of identification of the perpetrator was being solved by showing a *modus operandi* in connection with uncharged bad acts.

In this situation, the evidence of a prior conviction clearly was admissible because it met the demands of the:

Special rule of relevancy demanding that the proponent satisfy the trial court that the evidence does make more probable, than it would be without the evidence, the existence of a fact of consequence in the determination of the action * * *.

*Coleman v. State*, 741 P.2d 99, 103 (Wyo. 1987).

It cannot be denied the evidence of the prior conviction made it more probable, than it would have been without this evidence, that the perpetrator here was Jay Dean, Sr.

Jay Dean, Sr. was more than forty years old, and he previously had been convicted of an almost identical crime. Jay Dean, Jr. was seventeen years old, and he did not have that peculiar background. His prior bad acts included shoplifting, auto theft, (convicted and sent to the Indiana Boys Reform School), theft (no conviction), leaving the scene of the accident, aggravated assault and no driver's license (no charges filed), driving while under the influence, driving with no tail light, and driving while under suspension (dismissed). On the other hand, Jay Dean, Sr.'s statement made under oath to an investigator for the Division of Criminal Investigation on November 24, 1982 related the precise details of the criminal activity that was in issue here.

For me, it is a major departure from the logical symmetry described in the quote in the footnote on page 10 of the majority opinion to say that "in this case, evidence of appellant's prior conviction sheds no light on the identity of the perpetrator without relying on the impermissible inference that appellant did it once; therefore, he must have done it this time." Slip op. at 6. While the claim that these are common techniques used in the commission of this kind of crime might well be true if one were trying to identify a perpetrator from a universal population by reliance upon a "signature crime," there is an entirely different dynamic present here. The only identity issue in this case is to choose between two individuals. Under those circumstances, it seems clear Jay Dean Sr.'s prior conviction does shed light on the identity of the perpetrator in this crime, and the jury reached an ineluctably correct result. Logical symmetry in the application of the decisions of this Court is of at least equivalent import to logical symmetry in the application of WYO.R.EVID. 404(b) in a given case as described by Professor Imwinkelried.

With respect to the choice of the rule made from the quoted material in footnote 3, the majority has chosen the rule that most favors the criminal. It is antithetical to a well-known rule of appellate review in this court that we will sustain a decision of the trial court on any correct ground. "On appeal, we give great deference to a trial court's determination concerning admissibility of 404(b). So long as there is a legitimate basis for the court's decision we cannot say that there was an abuse of discretion." *Longfellow v. State*, 803 P.2d 848, 851 (Wyo.1990) (citing *Pena v. State*, 780 P.2d at 318. The majority approach is illustrative of the danger in delegating the judicial role to academic writers. The academician has no obligation to society

# 616

to decide anything; the academician's role is to present dialogue and debate with respect to different views. The members of the judiciary should remember that most academicians are advocates, however carefully they may guard their language, and quotations from academic works are similar to quotes from the briefs of the parties.

While I indeed would be the last to deny the importance of the procedure described at pages 9–10 of the majority opinion (*see Coleman*), we are applying a new requirement in a situation in which the participants had every justification to believe they had proceeded properly. I cannot explain why the State chose to emphasize knowledge and argument, but there is no question the evidence was proffered at trial in the issue of identity, and it clearly can be sustained on the issue of identity. The demand of the "special rule of relevancy" was met because the evidence of the prior conviction made it more probable than not that Jay Dean, Sr. was the perpetrator of these crimes, an issue of identity.

I can see no basis to distinguish this case from the instances found in *Grabill v. State,* 621 P.2d 802 (Wyo.1980), and *Longfellow,* 803 P.2d 848, both of which are cited in the majority opinion. In those cases, evidence of prior bad acts was used to identify one person out of a set of two as the one who had committed the crime. All the evidence in the death of each child demonstrated it was due to abuse committed by one of two people, the parent of the victim or another person. In both instances, we held the trial court did not abuse its discretion when it admitted evidence of instances of abusive treatment by the defendant on prior occasions. The evidence tended to demonstrate which of two persons had committed the crime and clearly met the demands of the special rule of relevancy described in *Coleman.*

Under the circumstances, I can discern no abuse of discretion on the part of the trial court in this instance. The admission of proof of another crime to demonstrate identity of the defendant as a perpetrator of the offense charged does not demand the two episodes be factually the same in every detail. The inquiry is only as to whether the two crimes have enough characteristics in

common to justify a cautious judgment that the probative value outweighs the prejudicial effect. 3 Mark S. Rhodes, Orfield's Criminal Procedure under the Federal Rules § 26:380 (2d ed. 1986).

In my judgment, the trial court provided a proper limiting instruction in this case, and the circumstances justified the detail in which the prior criminal conduct was described. These factors did not contribute to any conclusion of an abuse of discretion on the part of the trial court. The essential reason for not admitting evidence of other crimes, wrongs, or acts is that the evidence is not relevant to establish the conduct in question. No one quarrels with that approach. In a case like this one, in which the evidence of the prior conduct is relevant to assist the jury in deciding the issue of identity, such evidence clearly is admissible. In this instance, the court has achieved an incorrect result simply for the purpose of making a point with the attorneys representing the State of Wyoming.

I would affirm Jay Dean Sr.'s conviction.