**Kathleen DeWITT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 95–136.

Supreme Court of Wyoming.

May 31, 1996.

Sylvia Lee Hackl, State Public Defender; Deborah Cornia, Appellate Counsel; and Donna D. Hoffdahl, Assistant Appellate Counsel (argued), for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling; Theodore E. Lauer, Director, Prosecution Assistance Program; and Jennifer P. Hanft, Student Intern (argued), for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

LEHMAN, Justice.

Appellant Kathleen DeWitt (DeWitt) appeals her conviction of felony child abuse in violation of W.S. 6–2–503(a)(i) and (ii)(A) (1988), asserting that the district court erred by failing to suppress evidence of prior bad acts, erred by allowing a social worker to testify, and that the evidence was insufficient to support her conviction.

We affirm.

### ISSUES

DeWitt and the State identify the following issues:

1. Did reversible error occur because the District Court did not follow the procedure mandated in *Dean v. State*, 865 P.2d 601 (Wyo.1993)?

2. Did reversible error occur because the District Court allowed a social worker to testify to conditions she observed in DeWitt's home?

3. Was the evidence sufficient to convict DeWitt of felony child abuse?

## FACTS

On the evening of March 28, 1994, DeWitt took her eight-month-old daughter (hereinafter referred to as Infant) to the emergency room of United Medical Center West in Cheyenne. The emergency room physician recognized the situation as critical, in that Infant would likely die within a few days without immediate treatment. Infant was diagnosed as being in a condition of substantial malnutrition caused from receiving inadequate calories. Infant remained in the hospital for a week, where she immediately improved and began gaining weight. Upon release, Infant was placed in foster care.

DeWitt was charged with felony child abuse for intentionally or recklessly inflicting physical injury upon a child eight months of age. Following conviction by jury trial, DeWitt was sentenced to a term of not less than four nor more than five years at the Wyoming Women's Center. This sentence was suspended, and DeWitt was placed on probation for four years with the condition that she enter the Surveillance and Treatment of Offenders Program. DeWitt timely appeals.

## DISCUSSION

### I. Prior Bad Acts

■ During a motions hearing prior to trial, DeWitt's counsel inquired whether the State would be entitled to introduce evidence regarding the molestation of some of DeWitt's children by another one of her children in the event defense counsel introduced evidence of DeWitt's character as a good mother. The State responded that it would not use any W.R.E. 404(b) prior bad acts evidence in its case in chief but that if De-Witt's character as a mother was brought into issue, they would then introduce evidence to rebut and impeach such character. The court did not articulate the five-part test set out in *Dean v. State*, 865 P.2d 601 (Wyo. 1993) but, instead, ruled that as evidence was offered and an objection posed, the court would rule upon its admissibility. DeWitt chose not to introduce evidence relating to herself as a good mother, and the State

therefore introduced no prior bad acts evidence. DeWitt now asserts that, because of the court's ruling and failure to articulate the *Dean* five-part test, she was effectively estopped from introducing character evidence for fear that such evidence would be used against her.

■ This court has continually held that once the defendant introduces character evidence, the prosecution may then explore, both through cross-examination and on rebuttal, the matter raised by the accused. W.R.E. 404(a)(1); *Trujillo v. State*, 880 P.2d 575, 580 (Wyo.1994); *Kwallek v. State*, 596 P.2d 1372, 1378 (Wyo.1979); *Grabill v. State*, 621 P.2d 802, 808 (Wyo.1980); *Summers v. State*, 725 P.2d 1033, 1046 (Wyo.1986); *see also Kleinschmidt v. State*, 913 P.2d 438, 440 (Wyo.1996) and *Taul v. State*, 862 P.2d 649, 655 (Wyo.1993). Thus, to the extent that DeWitt's evidence would have demonstrated that she was a good mother and had never neglected the care and supervision of her children, the State would have been entitled to rebut with evidence to the contrary, pursuant to W.R.E. 405. *See Taul*, at 655, and *Kleinschmidt*, at 440. The court's reserved ruling and failure to address the five-part *Dean* test did not estop DeWitt from introducing her good character evidence. *See Kleinschmidt*, at 440. "It did no more than provisionally allow the admission of the evidence if [DeWitt] testified in such a manner as to make W.R.E. 404(a)(1) and W.R.E. 405 applicable." *Id.*

### II. Admissibility of testimony

■ DeWitt contends that the district court erred in allowing a social worker to testify. The social worker was in DeWitt's home twice a week to facilitate home visits for another DeWitt child who had been one of the victims of sexual molestation by another DeWitt child. DeWitt objected to the admissibility of the social worker's testimony on the grounds that it would have no value in proving that DeWitt starved Infant and that it would be prejudicial because DeWitt could not explain the worker's presence in the home without opening the door to the molestation issue. The State avers its probative value outweighed any prejudicial effect be-

cause it related to the social worker's observations of DeWitt's neglect of Infant.

 The standard of review is well-established:

> For this court to conclude that the trial court admitted unduly prejudicial evidence in violation of W.R.E. 403, [appellant] "must demonstrate that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury."

*Geiger v. State*, 859 P.2d 665, 668 (Wyo.1993) (*quoting Apodaca v. State*, 627 P.2d 1023, 1027 (Wyo.1981)). Whether to exclude admissible evidence is a matter left to the exercise of sound discretion of the district court. *Barnes v. State*, 858 P.2d 522, 527 (Wyo.1993). A district court's discretionary rulings on evidence will not be upset absent a clear abuse of discretion, and the burden of establishing such abuse lies with the defendant. *Id.* An abuse of discretion occurs when a court acts in a manner which exceeds the bounds of reason under the circumstances. *Id.* Decisions of the district court with respect to admissibility of evidence are entitled to considerable deference and, as long as there is a legitimate basis for the district court's ruling, that ruling will not be reversed on appeal. *Id.*

To warrant reversal pursuant to W.R.E. 403, the probative value of the evidence must be either slight or none at all. *Hopkinson v. State*, 632 P.2d 79, 104 (Wyo.1981). Here, the social worker's testimony provided first-hand observations of DeWitt's interaction with her children in the home. She observed that DeWitt left the feeding of Infant largely to the infant herself and her slightly older siblings and that DeWitt frequently and inappropriately ignored Infant. This testimony corroborated the testimony of both the State's expert pediatrician and the hospital social worker, who studied Infant during her stay at the hospital, that Infant was essentially a self-feeder and that she was substantially malnourished due to neglect.

 All evidence which tends to prove a defendant's guilt might be viewed as inherently "prejudicial," but the dispositive key is whether the evidence is *unfairly* prejudicial.

*Story v. State*, 721 P.2d 1020, 1033 (Wyo. 1986); *Barnes*, 858 P.2d at 528; *Hopkinson*, 632 P.2d at 126; W.R.E. 403. In this regard, DeWitt must establish that the State introduced the testimony for the purpose of inflaming the jury or that the testimony was extremely inflammatory. *Geiger*, 859 P.2d at 668; W.R.E. 403. The State had the burden of proving that DeWitt recklessly neglected the nourishment of Infant. The social worker testified only of her first-hand observations while in the home for short periods of time. We can find nothing unfairly prejudicial or inflammatory.

### III. Sufficiency of the Evidence

 DeWitt argues the State failed to present sufficient evidence to prove beyond a reasonable doubt that she intentionally or recklessly inflicted the harm that Infant suffered. *See* W.S. 6–2–503(a)(ii)(A). In this regard, we must assess whether

> all of the evidence presented is "adequate to support a reasonable inference of guilt beyond a reasonable doubt to be drawn by the finder of fact, viewing the evidence in the light most favorable to the state." * * * We do not substitute our judgment for that of the jury in applying this rule, and our only duty is to determine if a quorum of reasonable and rational individuals would, or even could, have come to the same result the jury actually did.

*Taul*, 862 P.2d at 657 (*quoting Springfield v. State*, 860 P.2d 435, 449 (Wyo.1993)); *see also Trujillo*, 880 P.2d at 578; *Hodges v. State*, 904 P.2d 334, 339 (Wyo.1995); and *Bloomquist v. State*, 914 P.2d 812, 823–24 (Wyo. 1996). It is not our function to assess the facts or reweigh the evidence. We must assume that the jurors believed only the evidence adverse to the defendant. It is the role of the jury, as fact finder, to evaluate the evidence as well as weigh the credibility of the witnesses.

*Taul*, 862 P.2d at 657.

> The State bore the burden of proving:
> (a) Except under circumstances constituting a violation of W.S. 6–2–502, a person is guilty of child abuse, a felony punishable by imprisonment for not more than five (5) years, if:
>
> \* \* \* \* \* \*

(ii) The actor intentionally or recklessly inflicts upon a child under the age of sixteen (16) years:

(A) Physical injury as defined in W.S. 14–3–202(a)(ii)(B)[.]

W.S. 6–2–503. Physical injury is defined as death or any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition[.]

W.S. 14–3–202(a)(ii)(B) (Cum.Supp.1993). A person acts recklessly when

he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

W.S. 6–1–104(a)(ix) (1988). Thus, the State was required to show that Infant's grave malnutrition resulted from DeWitt's conscious disregard of the known risk that her failure to attend to Infant's feeding would cause Infant to suffer substantial malnutrition.

Testimony established that an average eight month old baby weighs between eighteen and twenty pounds. Infant weighed seven pounds and six ounces at birth, yet weighed only ten pounds eight months later when she was admitted to the hospital. DeWitt admitted that she had not taken Infant to see a doctor since birth. She testified that she knew it was her responsibility to feed Infant and that a baby would starve if it were not fed, yet she also testified that she thought Infant could feed herself. Additionally, the jury heard the corroborating testimony from the social worker of her observations of neglect. Medical evidence revealed that upon admission to the hospital, Infant was limp and so weak she could neither cry nor move; her bones were grossly protruding from her ribs, arms, legs, and pelvis; and she had a blank stare. The jury could have

reasonably and rationally inferred from this evidence that DeWitt knew that her child would become substantially malnourished if not fed properly, that Infant's substantial malnutrition was readily apparent to DeWitt, and that DeWitt consciously disregarded these facts and risks until Infant was close to death.

Extensive medical testimony established that Infant's condition was due to severe and substantial malnutrition. Dr. Bell, a pediatrician, using results from medical tests, a growth chart, photographs of Infant, and the *Nelson's Textbook of Pediatrics* established that Infant suffered from neglectful or non-organic failure to thrive.[1] Medical tests established that the malnutrition was not due to an illness but rather was ongoing as a result of inadequate calories. Additionally, two hospital nurses testified that Infant was the worst case of failure to thrive they had ever seen. DeWitt's expert medical witness, Dr. Krebs, a pediatrician and nutritionist, testified that there was no question that Infant was malnourished, albeit she testified this condition was due to dehydration. And finally, evidence established that once Infant received medical attention, she made substantial gains in weight and growth, so that by the time of trial she had gained twelve pounds.

We conclude that the evidence was sufficient to sustain DeWitt's conviction for felony child abuse. "The fact that [DeWitt] presented a different theory does not mean that the jury engaged in mere speculation or conjecture in rejecting that theory." *Bloomquist,* 914 P.2d at 824.

### CONCLUSION

Finding no error in the failure to apply the *Dean* factors to proposed character evidence inasmuch as that evidence was rebuttal evidence rather than W.R.E. 404(b) evidence and the evidence was never introduced at trial; finding no error in allowing the jury to hear testimony from the social worker, as the

---

1. "Failure to thrive" is divided into two categories: 1) organic failure to thrive, which describes a child who is failing to grow due to some kind of disease, and 2) non-organic failure to thrive, which describes a child who fails to grow simply because it does not receive enough food due to neglect.

probative value of the testimony was not substantially outweighed by the danger of unfair prejudice; and finding sufficient evidence to sustain DeWitt's conviction for felony child abuse, the judgment and sentence of the district court is

Affirmed.