Robert Ray SORENSEN, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 94-130.

Supreme Court of Wyoming.

May 15, 1995.

Leonard D. Munker, State Public Defender, and David Gosar, Asst. Public Defender. Argument by Mr. Gosar, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., D. Michael Paul-ing, Sr. Asst. Atty. Gen., Georgia L. Tibbetts, Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, Nell C. Howell, Student Intern, and Patricia A. Robblee, Student Intern. Argument by Ms. Robblee, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

LEHMAN, Justice.

Robert Sorensen (appellant) was convicted of one count of knowingly taking immodest, immoral or indecent liberties with a child in violation of W.S. 14–3–105. He appeals his conviction alleging errors in the admission of prior bad acts, expert testimony and out-of-court statements by the victim.

We reverse.

Appellant phrases his three issues as statements:

Argument I

Plain error occurred by the admission of expert testimony, as affirmative evidence of sexual abuse, on an untested and novel theory known as "traumagenic dynamics."

Argument II

Reversible error occurred by the district court's failure to follow the procedure mandated by this court in *Dean v. State,* 865 P.2d 601 (Wyo.1993).

Argument III

Plain error occurred by the admission of the complaining witness' out-of-court statement to Lynore Terry.

### FACTS

On July 13, 1994, appellant's thirteen-year-old daughter, J.S., told a counselor at the Wyoming Girls' School that appellant had been sexually molesting her since she was five years old. Appellant was subsequently charged with one count of indecent liberties stemming from an incident with J.S. on May 23, 1993.

Appellant's allegations of error at trial revolve around the testimony of three witnesses: J.S., who testified about prior incidents of abuse which appellant had inflicted

upon her since the age of five; another witness who testified that J.S. had told her in October of 1992 that appellant was engaging in inappropriate touching with her; and the testimony of an expert on child sexual abuse, Geral Blanchard, who told the jury about a theory called traumagenic dynamics, which purports to describe symptoms exhibited by sexually abused children. The specific facts regarding each of the alleged trial errors will be developed as necessary in our discussion below.

After a two-day trial, the jury returned a verdict of guilty. Appellant was sentenced to not less than 30 months nor more than 84 months in the state penitentiary.

## DISCUSSION

### A. Prior Bad Acts Testimony

 The admission of prior bad acts is governed by W.R.E. 404(b), which, in pertinent part, reads:

> Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We afford the trial court great deference in its determination of admissibility of prior bad acts evidence. *Dean v. State*, 865 P.2d 601, 606 (Wyo.1993). That discretion is not without limits, and we have adopted a five-part test to determine the admissibility of this evidence:

> 1. The extent to which the prosecution plainly, clearly, and convincingly can prove the other similar crimes;
>
> 2. The remoteness in time of those crimes from the charged offense;
>
> 3. The extent to which the evidence of other crimes is introduced for a purpose sanctioned by W.R.E. 404(b);
>
> 4. The extent to which the element of the charged offense, that the evidence is introduced to prove, is actually at issue;

> 5. The extent to which the prosecution has a substantial need for the probative value of the evidence of the other crimes.

*Bishop v. State*, 687 P.2d 242, 246 (Wyo. 1984), *cert. denied* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985); *Dean*, 865 P.2d at 606. Not all of the five factors need to be present in order for the evidence to be admissible; the trial court is vested with broad discretion in balancing the factors. *Id.* However, in most instances, all five of the factors will be present because each of them "stems from the fundamental requirement that evidence be relevant." *Dean*, 865 P.2d at 606. After concluding that the evidence is admissible under the above analysis, the trial court then must engage in a determination of whether the probative value of the evidence outweighs the danger of unfair prejudice or confusion of the issues created by the introduction of that evidence. *Id.;* W.R.E. 403.

In *Dean*, we mandated a uniform procedure to be followed by the trial court when addressing the admissibility of evidence under W.R.E. 404(b):

> In the future, when the state wishes to introduce evidence of a defendant's prior bad acts, the state carries the initial burden of demonstrating the admissibility of the evidence in the context of the five-part test we outlined above. The state must articulate which Rule 404(b) or other relevant purpose the evidence is specifically being offered to serve, and how the evidence is relevant for that purpose. The defendant must then respond with its arguments why the evidence should not be admitted, addressing issues of relevancy and Rule 403 concerns.

> The trial court must then articulate its findings of relevancy and how it weighed probative value against the countervailing factors. If the trial court determines the evidence should be admitted, it must identify the specific purpose for which the evidence is being admitted.

> * * * We now hold this procedure is mandatory and must be followed, both to provide a sufficient record for our review and to ensure every effort is made to protect a defendant from the unfair prejudice which

often accompanies evidence of prior wrongs.

*Dean,* 865 P.2d at 609–10 (footnote omitted). This court's opinion in *Dean* preceded appellant's trial; thus the mandatory procedure outlined was applicable.

Appellant contends that the trial court failed to follow the *Dean* procedure. Specifically, appellant claims that the trial court only addressed the second and third factors of the five-part test, remoteness and proper purpose, and it did not make a specific determination that the probative value of the evidence outweighed the danger of unfair prejudice and confusion of the issues.

■ We agree with appellant that the trial court failed to follow the mandatory procedure set out in *Dean,* requiring reversal of his conviction. The trial judge did not, on the record, articulate how it weighed the probative value of the evidence against the countervailing factors as required by *Dean.* In ruling that J.S.'s testimony was admissible, the trial judge stated:

> I'm going to permit [J.S.] to testify about the things that happened to her in the past. I've done an awful lot of these cases, and I've heard an awful lot of the experts, conditioning is absolutely a factor in these kinds of cases, happens in all of the cases. Never seen one of these claimed cases of parental incest or parental indecent liberties that just happened, suddenly someone appeared at the bedroom door and attempted to rape their child. It occurs over time with acts building up.

> It doesn't necessarily mean that—that [appellant]—pardon me—let me start over. It doesn't mean that I think [appellant] is guilty. It simply means that in all of these cases that is an essential part of these kinds of acts. It's an essential part of the State's case. It certainly falls within the course of conduct provision of Rule 404(b), and it may also go to motive.

It is apparent from this passage that the judge considered the relevancy of the evidence. However, it is equally apparent that he did not do the balancing under Rule 403 which we require to be made on the record.

While reversal may seem an extreme remedy, it is necessary to ensure a fair trial for the defendant. The proper place to determine whether the probative value of the evidence is outweighed by prejudice and confusion is in the trial court. This court, and the defendant, should not be placed in a position of having to make that determination for the first time on appeal. *See, e.g., Johnson v. State,* 872 P.2d 93, 98 (Wyo.1994). The procedure we prescribed in *Dean* is mandatory; failure to adhere to it is reversible error.

We now turn to appellant's other contentions of error since there is the possibility that they may arise again if there is a retrial.

## B. Expert Testimony

■ Expert testimony, in order to be admissible, must meet three criteria.

> First, the subject matter of the expert testimony must be beyond the understanding of laypersons and be distinctly related to some science. Second, the expert must possess sufficient skill, experience, or knowledge within the science to raise the inference that the expert's testimony will assist the trier of fact. Third, the scientific basis of the expert testimony must be in such a state of development so as to permit the expert to make a reasonable opinion. *Buhrle v. State,* 627 P.2d 1374, 1377 (Wyo. 1981) (*quoting Dyas v. United States,* 376 A.2d 827, 832 (D.C.App.1977), *cert. denied* 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977))[.]

*Frenzel v. State,* 849 P.2d 741, 747 (Wyo. 1993). On several occasions this court has found that expert testimony on the behavioral characteristics of adolescent victims of sexual abuse is admissible because it may assist the jury in understanding any inconsistent behavior exhibited by the victim. *Frenzel,* 849 P.2d at 747; *Griego v. State,* 761 P.2d 973, 978–79 (Wyo.1988); *Scadden v. State,* 732 P.2d 1036, 1046–47 (Wyo.1987).

Traumagenic dynamics is a model which "postulates that the experience of sexual abuse can be analyzed in terms of four trauma-causing factors." *See* Finkelhor, David & Browne, Angela, *The Traumatic Impact of Child Sexual Abuse: A Conceptualization,* Am.J. Orthopsychiatry, Vol. 55(4) 530 (Octo-

ber 1985). Those four factors are: traumatic sexualization which "refers to a process in which a child's sexuality (including both sexual feelings and sexual attitudes) is shaped in a developmentally inappropriate and interpersonally dysfunctional fashion as a result of sexual abuse," *Id.*, at 531; betrayal which "refers to the dynamic by which children discover that someone on whom they were vitally dependent has caused them harm," *Id.*; powerlessness "or what might also be called disempowerment, the dynamic of rendering the victim powerless—refers to the process in which the child's will, desires, and sense of efficacy are continually contravened," *Id.*, at 532; and stigmatization which "refers to the negative connotations—*e.g.*, badness, shame, and guilt—that are communicated to the child around the experiences and that then become incorporated into the child's self-image." *Id.*

In his testimony, Blanchard described these factors to the jury, gave examples of each and then related how the behavior of J.S. exhibited characteristics of each factor. Blanchard further testified that the theory of traumagenic dynamics was generally accepted in the field. Appellant complains that this testimony was not admissible under W.R.E. 702 and 704. He also asserts that Blanchard's testimony was improperly admitted as affirmative evidence that J.S. had actually been sexually assaulted in contravention with our holding in *Frenzel v. State*, 849 P.2d 741 (holding that child sexual abuse accommodation syndrome testimony was admissible only to explain a victim's behavior which could be misconstrued by a jury as indicating that no abuse had occurred).

■ Our review of traumagenic dynamics leads us to conclude that it is not in such a state of development so as to permit the expert to make a reasonable opinion based on the use of the theory. The theory was originally introduced "to suggest a framework for a more systematic understanding of the effects of sexual abuse" in 1985. Am.J. Orthopsychiatry, at 539. Later, in a 1993 article, Finkelhor and two other authors discuss the need for improved methodology and research techniques in the area of child sexu-

al abuse. In that context, they discuss traumagenic dynamics:

> Little research has been carried out to confirm the model in part because of its complexity, the variety of different mechanisms posited, and the difficulty of clearly delineating and measuring them.

Kendall–Tackett, Kathleen & Williams, Linda & Finkelhor, David, *Impact of Sexual Abuse on Children: A Review and Synthesis of Recent Empirical Studies*, Psychological Bulletin, Vol. 113(1) 164, 174 (Jan.1993). Interestingly, the article goes on to note that

> [f]ew studies are undertaken to establish or confirm any theory or explanation about what causes children to be symptomatic. Rather, most researchers simply document and count the existence of symptoms and some of their obvious correlates. This accounts for one of the main reasons that, in spite of numerous studies since Brown and Finkelhor's (1986) review, there have been few theoretical advances.

The State's claim that traumagenic dynamics has been generally accepted in the field is belied by the comments of the theory's own progenitor.

The State has not cited us to any articles in professional journals, law reviews or even appellate cases which directly address whether traumagenic dynamics has developed to such a point where it is considered reliable in its field. Research has revealed only two references, neither of which substantively discuss the theory. *State v. Tucker*, 165 Ariz. 340, 798 P.2d 1349 (App.1990) and Hall, M., *The Role of Psychologists as Experts in Cases Involving Allegations of Child Sexual Abuse*, 23 Fam.L.Q. 451 (1989). The paucity of any substantive discussion on the theory can lead us to conclude only that it is not sufficiently developed to be of assistance to the trier of fact. Unless and until such time as evidence can be brought forth which demonstrates to the contrary, traumagenic dynamics is inadmissible in the courts of Wyoming.

That is not to say that expert evidence on the behavioral characteristics exhibited by sexual assault victims is not admissible. As we noted earlier, this court has consistently let them in. However, in those cases the

evidence was based on either the expert's own experience or on a syndrome, CSAAS, which had reached a sufficient level of development to warrant its admission. *Griego,* 761 P.2d at 978–79; *Frenzel,* 849 P.2d at 747. The State may certainly continue to offer this type of evidence, but it may not wrap its evidence up in the cloak of a "theory" or a "syndrome" unless it has been established as reliable.

### C. Prior Consistent Statement

Finally, appellant complains that the trial court erred in admitting an out-of-court statement by J.S. as a prior consistent statement. At trial J.S. testified that she told a friend that "my dad was having sex with me * * *." Later the friend testified that J.S. had told her that appellant had touched her "private parts." Appellant asserts that the friend's testimony was not consistent with J.S.'s, therefore it was inadmissible.

Wyoming Rule of Evidence 801(d)(1)(B) provides:

A statement is not hearsay if * * * [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.

Appellant does not dispute that the statement was properly used to rebut an express charge of recent fabrication; he only challenges whether the statement is consistent with J.S.'s testimony.

We find no error in the admission of the friend's testimony as a prior consistent statement. In her testimony, J.S. did not elaborate on what she meant by "having sex." Appellant equates the phrase with intercourse, which he argues is not consistent with the friend's touching testimony. However, the friend's statement is consistent with J.S.'s testimony because touching "private parts" could be construed as meaning "having sex." The fact that the testimony is susceptible to different interpretations is not relevant so long as one interpretation is consistent. If there is a question as to the consistency of the statements, the proper place to divine the witnesses' meaning is during cross-examination, not on appeal.

### CONCLUSION

The failure of the trial court to adhere to the mandatory procedure set out by this court in *Dean v. State* on the admission of prior bad acts testimony under W.R.E. 404(b) requires us to reverse appellant's conviction.

Reversed and remanded to the trial court for further proceedings in accordance with this opinion.