**James Abraham TRUJILLO,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 96–205.

Supreme Court of Wyoming.

Feb. 12, 1998.

Sylvia L. Hackl, State Public Defender; Donna Domonkos, Appellate Counsel; and Diane M. Lozano, Assistant Appellate Counsel, for Appellant (Defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker–Musick, Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Kurt A. Infanger, Student Intern, for Appellee (Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

TAYLOR, Chief Justice.

Charged with the brutal beating and forced confinement of his pregnant girlfriend, appellant was convicted of aggravated assault and battery and kidnapping. Appellant now appeals the district court's evidentiary rulings. Finding that the district court properly admitted evidence of appellant's prior misconduct and the testimony of a domestic violence expert, we affirm.

## I. ISSUES

Appellant, James Trujillo (Trujillo), raises three issues on appeal:

*ISSUE I*

The trial court erred when it permitted the State to use prior bad act evidence against the appellant in order to obtain a conviction.

*ISSUE II*

The district court abused its discretion when it allowed the state to present expert testimony on "Battered Woman Syndrome" in its case in chief.

*ISSUE III*

It was error to allow Rosemary Bratton to testify when her testimony was more prejudicial than probative.

Appellee, the State of Wyoming, condenses the issues:

I. Did the district court err in admitting evidence of appellant's past relationship with the victim under Wyoming Rule of Evidence 404(b) because this evidence was more unfairly prejudicial than it was probative?

II. Did the testimony of the state's expert witness regarding domestic violence constitute plain error?

## II. FACTS

In October of 1995, Natalie Newsome (Newsome) endured the last in a series of episodes of abuse by Trujillo. Having spent an hour smoking marijuana with friends, Trujillo turned upon Newsome, accusing her of stealing his marijuana. Rebuking her denials of the theft, Trujillo threatened Newsome with torture the next day if she did not tell him where she had hidden the marijuana. Using a padlock placed on the outside of the door to contain Newsome within their shared trailer house, Trujillo ordered Newsome to spend the night on the couch.

True to his word, early the next morning, Trujillo refused to allow Newsome to use the bathroom, knocked her to the floor, whipped her across the back and legs with an extension cord, and used the heated tongs of a hammer to burn the back of Newsome's leg.

Newsome, eight months pregnant at the time, repeatedly denied taking Trujillo's marijuana, and pleaded with him to stop the abuse. Dissatisfied with her protests, he used the extension cord to choke Newsome, pulling it so tight she nearly lost consciousness. He then pulled handfuls of hair from her head, and used a garden hose attached to the kitchen sink to "hose her down." Finally, Trujillo ordered Newsome to undress, gagged her, bound her, and left the trailer, again locking it from the outside.

When Trujillo returned approximately forty-five minutes later, Newsome was able to convince Trujillo she had money at a friend's home and would give it to him to replace the marijuana. Trujillo allowed Newsome to leave the trailer, and Newsome immediately called a friend who took her to the hospital and then to a safe house. After hearing Newsome's story, the safe house employees called the police.

On November 5, 1995, Newsome voluntarily left the safe house and rejoined Trujillo.

The couple traveled to Rawlins, Wyoming, where they were married on November 7, 1995. Shortly thereafter, Newsome returned to the safe house because she was afraid Trujillo would not allow her to go to the hospital to give birth. The couple's son was born on November 16, 1995.

Prior to trial, knowing Trujillo intended to use medical records of Newsome's psychological disorders,[1] the State filed a motion in limine to exclude evidence of Newsome's history of mental problems.[2] The State also filed a notice of intent to offer evidence pursuant to W.R.E. 404(b), including threats made by Trujillo to prospective witnesses, prior acts of assault against Newsome, prior acts of assault against other individuals, prior acts of locking Newsome and others into the trailer, and prior activity as a marijuana dealer and user.

One week before trial, a hearing was held on the admissibility of Newsome's mental history and the W.R.E. 404(b) evidence. The trial judge reserved ruling on the medical evidence, but ruled that W.R.E. 404(b) evidence directly related to this victim would be admitted at trial. The State was also allowed to present evidence of Trujillo's threats to potential witnesses and evidence of other acts of assaultive conduct, including locking people into his trailer. However, evidence of similar acts against Trujillo's former wife and of his marijuana dealing was not permitted.[3]

At trial, the State presented sixteen witnesses, including the victim. Seven of those witnesses testified regarding acts committed by Trujillo either against them or against Newsome in their presence. Eight of the witnesses were police officers, safe house workers, and other social welfare workers who testified as to the result of Trujillo's acts on Newsome. In addition, the State presented testimony of two friends with whom Tru-

jillo had been smoking marijuana on the evening in question. Both testified he had offered them bribes to testify favorably and threatened them with violence if they did not. Rosemary Bratton, Education Coordinator for the Wyoming Coalition Against Domestic Violence and Sexual Assault, testified that based upon the Newsome testimony at trial, it was Ms. Bratton's expert opinion that Newsome's description of her relationship with Trujillo resembled behavior characterized by Hostage Syndrome and Battered Woman Syndrome.

The defense contended the charges were based on Newsome's hallucinations resulting from her psychological dysfunction. Trujillo attempted to present Newsome as being mentally unbalanced, and therefore not credible, because she had stopped taking her psycotropic medication during pregnancy. Trujillo's brother and sister-in-law both testified that Newsome was happy to be married to Trujillo. Trujillo's brother further related prior incidents of explosive behavior from Newsome directed at Trujillo.

Dr. David Peltier, a clinical psychologist, testified as the defense expert describing the characteristics of Newsome's mental condition. He stated that failure to take the prescribed medication for these conditions could result in more severe symptoms, including paranoid hallucinations. Cross-examination of Dr. Peltier revealed that Newsome had suffered an isolated incident of delusional thought in 1987, but since 1991, her condition was better characterized as major depression and anxiety disorders.

The jury returned a verdict of guilty on both counts. Trujillo was sentenced to concurrent terms in the Wyoming State Penitentiary of eight to ten years for aggravated assault and battery and eight to twelve years

---

1. Psychogenic pain disorder, a schizophreniform disorder, and schizoidal personality disorder.

2. These disorders are frequently characterized by hallucinations or delusions and disordered behavior. These afflictions can be controlled with medication; however, the medical records indicated that Newsome had stopped taking the medication during her pregnancy.

3. At this hearing, the State also notified the district court and the defense of its intent to call Rosemary Bratton as an expert witness in domestic violence. On the morning of trial, the State received permission for Ms. Bratton to be excluded from the sequestration order. Although the defense objected to this exclusion, it did not object to her being called as a witness or to the proposed content of her testimony.

for kidnapping. He filed this timely appeal from that verdict and sentence.

## III. STANDARD OF REVIEW

■ After determining that evidence of prior acts is admissible pursuant to W.R.E. 404(b), the trial court is required to conduct a balancing test to ensure the evidence is not unduly prejudicial and therefore proscribed by W.R.E. 403. *Vigil v. State,* 926 P.2d 351, 354 (Wyo.1996); *McDermott v. State,* 897 P.2d 1295, 1298 (Wyo.1995); *Sorensen v. State,* 895 P.2d 454, 456 (Wyo.1995). The balancing test under W.R.E. 403 is assigned to the sound discretion of the trial court, and we afford the trial court great deference in its determination of admissibility of prior bad acts evidence, including uncharged misconduct evidence. *Rigler v. State,* 941 P.2d 734, 737 (Wyo.1997) *(quoting Ross v. State,* 930 P.2d 965, 968 (Wyo.1996)); *Sorensen,* 895 P.2d at 456; *Jennings v. State,* 806 P.2d 1299, 1305 (Wyo.1991). A district court's discretionary rulings will not be disturbed on appeal absent a clear abuse of discretion. *DeWitt v. State,* 917 P.2d 1144, 1148 (Wyo. 1996).

■ We review evidence to which the defense does not object at trial using the three-part test of the plain error standard. First, the record must be clear as to the incident which is alleged as error. Next, the party claiming error must demonstrate that a clear and unequivocal rule of law was violated. Finally, it must be proved that a substantial right has been denied, resulting in material prejudice. Unless admission of the evidence achieves the status of plain error, reversal is not warranted. *Vigil,* 926 P.2d at 357–58.

## IV. DISCUSSION

### A. W.R.E. 404(b) EVIDENCE

■ Trujillo contends the district court erred in admitting evidence of his prior assaultive acts against Newsome and others. Conceding that the evidence is relevant pursuant to W.R.E. 404(b) and that the hearing on its admissibility was properly conducted by the district court, Trujillo's only contention is that he was unfairly prejudiced because the district court failed to properly balance the evidence under W.R.E. 403.[4] Trujillo does not argue that the witnesses repetitively testified to the same events, but that the sheer number of incidents presented to the jury was excessive.

■ In balancing the potential for unfair prejudice against the probative value of evidence, " 'the trial court should consider the extent to which the evidence distracts the jury from the central question whether the defendant committed the charged crime.' " *McDermott,* 897 P.2d at 1298 *(quoting Dean v. State,* 865 P.2d 601, 609–10 n. 2 (Wyo. 1993)). The record shows the district court carefully weighed the State's proposed evidence in accordance with W.R.E. 403. The evidence was appropriately admitted to corroborate Newsome's testimony in light of Trujillo's attack on her credibility. *Jackson v. State,* 891 P.2d 70, 76 (Wyo.1995); *Gezzi v. State,* 780 P.2d 972, 978 (Wyo.1989). The district court precluded evidence which was determined to be unfairly prejudicial, such as evidence regarding Trujillo's treatment of his first wife and his marijuana dealing.

These rulings by the district court were made carefully and in accordance with applicable law. Therefore, we find no abuse of discretion in allowing the State to present this testimony.

### B. ROSEMARY BRATTON'S EXPERT TESTIMONY

■ Trujillo asserts that the testimony of Ms. Bratton, the State's expert on domestic violence, was improperly admitted because such evidence is relevant only when the victim is a minor or has claimed self-defense. Because there was no objection at trial, we must determine whether Ms. Bratton's testimony constituted plain error. This claim

---

4. W.R.E. 403 provides:

    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

fails, as we find no violation of a clear and unequivocal rule of law.

To be admissible, expert testimony must meet the requirements of W.R.E. 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

We have previously permitted expert testimony to explain a victim's behavior. *See, e.g., Frenzel v. State*, 849 P.2d 741, 746 (Wyo. 1993), *cert. denied*, —— U.S. ——, 118 S.Ct. 388, 139 L.Ed.2d 303 (1997); *Griego v. State*, 761 P.2d 973, 979 (Wyo.1988); *Scadden v. State*, 732 P.2d 1036, 1047–48 (Wyo.1987); and *Lessard v. State*, 719 P.2d 227, 234 (Wyo. 1986). In *Sorensen*, 895 P.2d at 459, we made it clear that expert testimony to explain a victim's behavior is admissible so long as it is "based on either the expert's own experience or on a syndrome * * * which ha[s] reached a sufficient level of development to warrant its admission."

The State's evidence showed a pattern of violence and abuse by Trujillo against Newsome over a period of several years. Each time she returned to Trujillo voluntarily, going so far as to marry him after the incident at issue in this case. This behavior was the subject of Ms. Bratton's expert testimony. Ms. Bratton described the characteristics of a person suffering from both Battered Woman Syndrome and Hostage Syndrome and its symptoms. Ms. Bratton opined that Newsome's continued return to Trujillo resembled both the Battered Woman Syndrome and the Hostage Syndrome.

In this case, the jury could easily have misconstrued Newsome's continuing return to the abusive environment of Trujillo's home as an indication that no abuse had occurred, thus establishing Trujillo's defense that the incident was imagined by Newsome. Ms. Bratton's expert explanation of this behavior was helpful to the jury's understanding, and was based upon recognized syndromes.

Trujillo also draws our attention to Wyo. Stat. § 6–1–203 (1997) which permits a defendant to use expert testimony on Battered Woman Syndrome in cases of self-defense. He argues that if we allow such testimony to explain a victim's behavior, we are impermissibly extending this statute beyond the legislature's intent. The affirmative defense of self-defense and Wyo. Stat. § 6–1–203 have no relevance here, other than, perhaps, to underscore that Battered Woman Syndrome is sufficiently developed to be the basis for expert testimony. We are not persuaded by his claim that this evidence was unfairly prejudicial.

There is nothing in the requirements of W.R.E. 702 or prior case law which makes its application dependent upon the age of the victim or the type of crime. Accordingly, we hold that the rule articulated in *Sorensen*, 895 P.2d 454, applies in all cases where the State wishes to present expert testimony to explain a crime victim's behavior. *See Kolb v. State*, 930 P.2d 1238, 1241 (Wyo.1996) and *Witt v. State*, 892 P.2d 132, 138 (Wyo.1995) (expert testimony is admissible when, in the discretion of the district court, it is helpful to the trier of fact).

There was no violation of a clear and unequivocal rule of law, and the admission of Ms. Bratton's testimony was not error.

## V. CONCLUSION

Having decided to characterize himself as the victim of Newsome's psychotic delusions, Trujillo invited the evidence of prior bad acts which corroborated Newsome's testimony. The expert opinion was properly admitted to explain the victim's repeated reconciliations with her tormentor. It is clear that Trujillo received a fair trial on all counts. The judgment and sentence of the district court are affirmed.