2001 WY 25

**Carl Thomas CHAPMAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 99–125.

Supreme Court of Wyoming.

March 5, 2001.

Rehearing Denied March 27, 2001.

Representing Appellant: Mike Cornia, Evanston, WY.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS,* MACY,** GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

[¶ 1] A Sweetwater County jury found Carl Thomas Chapman guilty of two counts of indecent liberties with a minor and two counts of third degree sexual assault. He appeals those convictions on the grounds that the district court committed various eviden-

* Concurred prior to retirement.

tiary and procedural errors during trial and sentencing and that he was denied effective assistance of counsel. Finding no such errors, we affirm.

## ISSUES

[¶ 2] Chapman raises five claims of error:

1. Did reversible error occur when the court allowed expert testimony on the theory of childhood sexual abuse and post traumatic stress disorder[?]

2. Did multiple charges and convictions for one event constitute double jeopardy[?]

3. Did the trial court err in failing to properly instruct the jury on the applicable law

　(A) if defendant was denied his right to due process and trial by jury by the lack of a proper elements instruction; and

　(B) if the appellant was entitled to have the jury instructed on the lesser included offense of fourth degree sexual assault[?]

4. Given the appellant's hearing impairment did his trial violate his rights to confrontation, effective assistance of counsel and his right to be present[?]

5. Was the appellant denied his right to effective assistance of counsel[?]

The State rephrases the issues thusly:

1. Whether plain error was committed by allowing expert testimony on the theory of childhood sexual abuse and post-traumatic stress disorder?

2. Whether appellant was punished multiple times for a single incident?

3. Whether the trial court properly instructed the jury?

4. Whether appellant's right to confrontation and his right to be present were violated?

5. Whether appellant received effective assistance of counsel?

## FACTS

[¶ 3] The parents of the victim were divorced in 1991. The father had visitation rights; and, at various times during 1994 and

** Retired June 2, 2000.

1995, the victim stayed with her father, a neighbor of Chapman and Chapman's wife. The victim oftentimes stayed with the Chapmans during father's visitation.

[¶ 4] In April of 1997, the victim told her mother that Chapman had sexually molested her. Chapman was eventually charged with one count of third degree sexual assault and one count of indecent liberties stemming from sexual activity alleged to have occurred on or about December 30, 1994.[1] Chapman was also charged with one count of third degree sexual assault and one count of indecent liberties stemming from sexual activity alleged to have occurred in June of 1995. These incidents were alleged to have occurred in Chapman's home at a time during which the victim was thirteen years old and Chapman was approaching 50.

[¶ 5] After hearing the testimony of the victim, the victim's parents, an expert, and Chapman's wife, a Sweetwater County jury found Chapman guilty of all charges. Convictions were entered accordingly. At Chapman's sentencing, the district court ordered the sentences from the December 1994/January 1995 offenses be served concurrently to each other; the sentences from the June 1995 offenses be served concurrently to each other; and the two sets of concurrent sentences be served consecutively. Chapman appealed.

## DISCUSSION

[¶ 6] In the first four issues in his appellate brief, Chapman claims error based on the admission of expert testimony, improper jury instructions, an alleged violation of the double jeopardy clause in his sentence, and an alleged violation of his right to confront witnesses and be present at trial because he could not hear the proceedings against him. In the alternative, Chapman claims he was denied effective assistance of counsel because trial counsel failed to object in each instance of claimed error. Given the structure of appellant's brief and in order to avoid repetition, we will address each claim only once, both substantively and, where ap-

propriate, as the claim pertains to the ineffective assistance claim. In order to do this, we first reiterate our well established standard for reviewing a claim of ineffective assistance of counsel:

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State*, 891 P.2d 793, 796 (Wyo.1995); *Starr v. State*, 888 P.2d 1262, 1266–67 (Wyo. 1995); *Arner v. State*, 872 P.2d 100, 104 (Wyo.1994); *Frias v. State*, 722 P.2d 135, 145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Herdt*, at 796; *Starr*, at 1266; *Arner*, at 104; *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Under the two-prong standard articulated in *Strickland* and *Frias*, an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Starr*, at 1266; *King v. State*, 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State*, 728 P.2d 628, 629 (Wyo.1986); *Frias*, 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to "render such assistance as would have been offered by a reasonably competent attorney" and that "counsel's deficiency prejudiced the defense of [the] case." *Lower v. State*, 786 P.2d 346, 349 (Wyo.1990). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

---

1. Although the information alleged this sexual activity occurred on or about December 30, 1994, the prosecutor provided notice to counsel, prior to trial, that the victim had indicated the activity occurred on January 1, 1995. The victim's testimony was consistent with this notice.

*Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

*Grainey v. State,* 997 P.2d 1035, 1038–39 (Wyo.2000).

### Expert testimony

■ [¶ 7] Chapman contends it was plain error to allow an expert witness to testify that the victim suffers from postraumatic stress disorder (PTSD) because (1) the court allowed the testimony without first determining that it was relevant and reliable; (2) the court failed to give a limiting instruction advising the jury that the testimony was admitted solely for the purpose of explaining the victim's behavior and not to prove that the victim's claim was true; and (3) during her testimony, the expert vouched for the credibility of the victim and also offered an opinion of guilt. Because trial counsel never requested a hearing on the admissibility of the expert testimony and did not otherwise object to the expert, Chapman also claims counsel's performance was outside the wide range of professionally competent assistance.

■ [¶ 8] A qualified expert witness may testify about scientific, technical, or specialized knowledge if such testimony will help the jury understand the case. W.R.E. 702. This court has adopted the federal *Daubert* model imposing gatekeeping responsibilities on trial courts deciding whether scientific or technical expert testimony is admissible. *See Bunting v. Jamieson,* 984 P.2d 467, 471 (Wyo.1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–93, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993)). In doing so, however, we did not "abandon our own precedent regarding the admissibility of expert testimony." *Bunting,* at 471. Under the *Daubert* model, the trial court must first determine whether the expert's methodology is reliable; then the court must determine whether the proposed testimony "fits" the facts of the particular case. *Id.* A district court's decision to admit or reject expert testimony is a decision solely within that court's discretion. *Seivewright v. State,* 7 P.3d 24, 29 (Wyo.2000); *Springfield v. State,* 860 P.2d 435, 438 (Wyo.1993); *Betzle v. State,* 847 P.2d 1010, 1022 (Wyo.1993).

[¶ 9] The expert in question testified that she held a bachelor's degree in psychology and had completed all but her dissertation toward a Ph.D. in psychology. She had been employed for twenty years as an outpatient therapist and was currently working at least part of the time with children who had been physically or sexually abused. To be a licensed counselor in Wyoming, she was required to have the educational equivalent of a master's degree, completed 2000 hours of supervised clinical work, and passed a test administered by the state licensing board. She had published articles about her work with sexually abused children in a peer-reviewed journal. The articles related specifically to identifying children who had been sexually abused, assisting them in working through trauma, and helping them overcome the behaviors or symptoms they experienced as a result of the trauma. She had training in working with people who had been diagnosed with PTSD and had been a certified trainer for six years in a neurolinguistics program dealing with PTSD. After explaining her qualifications, the expert testified about her meetings with the victim in this case and the observations she made during those meetings. She observed that the victim exhibited symptoms of disassociation and depression. She testified that it was her opinion the victim suffered from PTSD. She then went on to explain that it was common for victims of sexual abuse to delay reporting the abuse, become sexually active, and return to the abuser's home.

[¶ 10] Although Chapman does not take issue with the expert's qualifications, he does contend that the trial court should not have allowed the expert to testify about PTSD because, he claims, the theory of PTSD related to child sexual abuse is not sufficiently developed to permit an expert to formulate a reasonable opinion on the subject and is thus not helpful to the trier of fact. He relies heavily on the cases of *Frenzel v. State,* 849 P.2d 741 (Wyo.1993) and *Sorensen v. State,* 895 P.2d 454 (Wyo.1995), child sexual abuse cases involving expert testimony, to support his argument. Before addressing those cases, however, we examine the discussion of "rape trauma syndrome" found in *Scadden v. State,* 732 P.2d 1036 (Wyo.1987), because that

case provides background for the discussion of the issues in the case presently before the court.

[¶ 11] In *Scadden*, a case involving molestation of high schoolers by their teacher, although the admissibility of rape trauma syndrome testimony was challenged, this court did not need to reach the issue for decision of the case: "Detective Reikens' expert testimony was not testimony regarding rape-trauma syndrome, and therefore we do not now decide whether such testimony is admissible. In any event, the admissibility of rape-trauma testimony must be carefully confined to avoid jury convictions based not on what the direct evidence shows occurred, but on expert opinion." *Scadden v. State*, 732 P.2d at 1047. This court went on to hold the expert's testimony admissible to explain the behavioral characteristics of the victims. *Id.* at 1046–47 (citing *Lessard v. State*, 719 P.2d 227, 233–34 (Wyo.1986) (expert testimony used to explain rape victim's request to her assailant "Don't tell anybody.")). The *Scadden* court stated that this kind of testimony

> may play a particularly useful role by disabusing the jury of some widely held misconceptions about rape and rape victims, so that it may evaluate the evidence free of the constraints of popular myths.

732 P.2d at 1047 (quoting *People v. Bledsoe*, 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291, 298 (1984)).

[¶ 12] For a number of reasons, *Scadden* is important to our discussion in this case. First, it underscores this court's jurisprudence that expert testimony may be used to explain a victim's behavior. Second, the "rape trauma syndrome" mentioned in *Scadden* shares a close relationship with PTSD. Rape trauma syndrome (RTS)

> had its origin in an article by Burgess & Holmstrom, *Rape Trauma Syndrome*, 131 Am.J.Psychiatry 981 (1974) in which the authors reported on a study of those patients admitted during a one-year period to the emergency department of Boston City Hospital who presented a complaint of having been raped. RTS is the terminology used by some for a PTSD subset in which the trauma is rape. Consequently one of

the diagnostic criteria of PTSD, namely that the trauma be reexperienced, would in such cases involve a reexperiencing of the sexual assault.

*State v. Allewalt*, 308 Md. 89, 517 A.2d 741, 748 (1986); *see also State v. Black*, 109 Wash.2d 336, 745 P.2d 12, 16 (1987) ("the American Psychiatric Association indicates that the stress and trauma associated with rape is merely one type of a larger phenomenon known as [PTSD]".) On a closely related matter, we are compelled to make an observation regarding terminology. At least one court has found terminology important in analyzing this sort of testimony. In *State v. Allewalt*, the Maryland Court of Appeals permitted the use of PTSD testimony, but emphasized the expert "never used the term 'rape trauma syndrome,' and avoiding that terminology is more than cosmetic. The concern with unfair prejudice is largely reduced when the terminology does not equate the syndrome exclusively with rape." *Id.* at 751; *see also State v. Gettier*, 438 N.W.2d 1, 5–6 (Iowa 1989); *State v. Roles*, 122 Idaho 138, 832 P.2d 311, 318 n. 4 (App.1992).

[¶ 13] Returning to the cases relied on by Chapman, we first address *Frenzel*, where this court faced the issue of whether expert testimony on Child Sexual Abuse Accommodation Syndrome (CSAAS) was admissible. In performing its analysis, the court first acknowledged that expert testimony explaining behavior of sexual assault victims is generally admissible:

> Expert testimony that discusses the behavior and characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts is admissible. *Scadden v. State*, 732 P.2d 1036 (Wyo.1987). Such testimony is relevant and helpful in explaining to the jury the typical behavior patterns of adolescent victims of sexual assault. *Griego v. State*, 761 P.2d 973 (Wyo.1988). It assists the jury in understanding some of the aspects of the behavior of victims.... *Zabel v. State*, 765 P.2d 357 (Wyo.1988).

*Frenzel v. State*, 849 P.2d at 748 (quoting *Rivera v. State*, 840 P.2d 933, 939 (Wyo. 1992)). In keeping with the general admissibility of expert testimony to explain the vic-

tim's behavior, the *Frenzel* court, after a thorough review of pertinent authorities, ruled that CSAAS testimony would be admitted, but only on a limited basis:

> [W]e find that CSAAS evidence has yet to reach the stage of development which would permit an expert to reasonably conclude, on the basis of CSAAS alone, that abuse occurred. Therefore, CSAAS does not assist the trier of fact on the issue of whether abuse actually occurred. Additionally, we believe that admission of CSAAS evidence, without limitation, would run too high a risk of misleading the jury and therefore be more prejudicial than probative under W.R.E. 403. However, we also find that CSAAS evidence is relevant and admissible to dispel myths the public might hold concerning a child sexual abuse victim's post-abuse behavior if that behavior is an issue in the case.
>
> Qualified experts on child sexual abuse may, therefore, use evidence of CSAAS characteristics of sexually abused children for the sole purpose of explaining a victim's specific behavior which might be incorrectly construed as inconsistent with an abuse victim or to rebut an attack on the victim's credibility. For example, if the facts of a particular case show that the victim delayed reporting the abuse, recanted the allegations, kept the abuse secretive, or was accommodating to the abuse, then testimony about that particular characteristic of CSAAS would be admissible to dispel any myths the jury may hold concerning that behavior. Additionally, if requested, a limiting instruction concerning the narrow purpose of CSAAS should be granted. However, expert testimony of CSAAS cannot be used for the purpose of proving whether the victim's claim of abuse is true.

849 P.2d at 749.

[¶ 14] In *Sorensen*, at issue was the admissibility of testimony on the theory of traumagenic dynamics, a model that "postulates that the experience of sexual abuse can be analyzed in terms of four trauma-causing factors." 895 P.2d at 457. After a review of two articles in professional journals, this court concluded, due to the paucity of information on the subject and the fact that even the theory's own proponents conceded "few theoretical advances" had been made, that traumagenic dynamics was not sufficiently developed to the point it could be considered reliable in its field. *Id.* at 458 "Unless and until such time as evidence can be brought forth which demonstrates to the contrary, traumagenic dynamics is inadmissible in the courts of Wyoming." *Id.* The *Sorensen* court concluded discussion of this issue by writing, "The State may certainly continue to offer this type of evidence, but it may not wrap its evidence up in the cloak of a 'theory' or a 'syndrome' unless it has been established as reliable." *Id.* at 459; *see also Trujillo v. State*, 953 P.2d 1182, 1187 (Wyo.1998) ("Accordingly, we hold that the rule articulated in *Sorensen*, 895 P.2d 454, applies in all cases where the State wishes to present expert testimony to explain a crime victim's behavior."); *Ryan v. State*, 988 P.2d 46, 56 n. 6 (Wyo.1999).

[¶ 15] Given this legal backdrop, we must examine whether the PTSD offered in this case is sufficiently reliable to warrant admission. Chapman, in his appellate brief, cites to several articles from various publications to support his contention that PTSD related to child sexual abuse is not sufficiently developed or reliable to warrant admission. Although the State does not respond with like materials, our own research satisfies us that PTSD testimony is worthy of limited admissibility in this context.[2]

[¶ 16] First, PTSD has achieved acceptance in the fields of psychiatry and psychology. As Chapman recognizes in his brief, PTSD is included in the DSM IV, which has been described as "specialized literature that specifically catalogues the symptoms of men-

---

**2.** In *Rivera v. State*, 840 P.2d 933, 938 (Wyo. 1992), the defendant filed a motion in limine to "suppress testimony concerning 'Post Traumatic Stress Syndrome' (the rape-trauma syndrome) which was denied." Although this court could "discern no error in admission of testimony of these witnesses relating to the rape trauma syndrome," the issue currently before this court, whether PTSD testimony is sufficiently reliable to warrant admission, was not an issue in *Rivera*. 840 P.2d at 939.

tal disorders and prescribes the method by which the psychological evaluation should take place." *State v. Alberico,* 116 N.M. 156, 861 P.2d 192, 208 (1993). "The existence of the DSM [IV] and its general acceptance in psychology indicate that PTSD has been exposed to objective scientific scrutiny and empirical verification." *Id.* Furthermore, the PTSD diagnosis appears to be grounded in basic behavioral psychology. *Id.* at 209. Previously, this court has recognized, at least implicitly, the importance of the DSM's recognition of a syndrome. In *Trujillo,* 953 P.2d at 1186–87, this court held there was no plain error in admission of expert testimony on battered woman's syndrome to explain the victim's behavior. There, Trujillo argued that battered woman's syndrome testimony, which is referenced in Wyo.Stat.Ann. § 6–1–203 and, pursuant to that statute, defined by the DSM III R, should only be used when a defendant presents that testimony as a portion of her self defense claim. Rejecting that assertion, we wrote that Wyo.Stat.Ann. § 6–1–203 had no relevance "other than, perhaps, to underscore that Battered Woman Syndrome is sufficiently developed to be the basis for expert testimony." *Id.* at 1187.

[¶ 17] Not only is PTSD recognized by the DSM IV, it has been widely, although not universally, accepted by other jurisdictions as a reliable form of expert testimony in this context. *State v. Gettier,* 438 N.W.2d 1, 4–6 (Iowa 1989); *State v. Hall,* 330 N.C. 808, 412 S.E.2d 883, 889 (1992); *People v. Fasy,* 829 P.2d 1314, 1317 (Colo.1992); *State v. Alberico,* 861 P.2d at 208–9; *People v. Taylor,* 75 N.Y.2d 277, 552 N.Y.S.2d 883, 552 N.E.2d 131, 134–35 (1990); *State v. Allewalt,* 308 Md. 89, 517 A.2d 741, 745–47 (1986). Based on the foregoing, we conclude that expert testimony regarding PTSD is sufficiently reliable to warrant admission, and we find no error on this ground. However, despite being accepted as reliable, the ***purposes*** for which PTSD testimony should be admitted remain subject to debate. *State v. Gettier,* 438 N.W.2d at 5–6; *State v. Alberico,* 861 P.2d at 207; *State v. Black,* 109 Wash.2d 336, 745 P.2d 12, 18 (1987).

[¶ 18] Chapman correctly points out that this court has placed limitations on the ad-

mission of some forms of expert testimony, and Chapman claims those limitations were exceeded at his trial. Chapman contends the PTSD testimony at his trial violated the rule in *Frenzel,* 849 P.2d at 749, holding that expert testimony that a sexual abuse victim suffers from CSAAS cannot be used to prove the sexual abuse occurred. Preliminarily, we agree with Chapman's premise that a diagnosis of PTSD should not be used to prove the sexual abuse occurred. *State v. Moran,* 151 Ariz. 378, 728 P.2d 248, 256 (1986); *State v. Booker,* 348 N.W.2d 753, 755. (Minn.1984); *People v. Bledsoe,* 36 Cal.3d 236, 203 Cal. Rptr. 450, 681 P.2d 291, 301 (1984); *State v. Black,* 745 P.2d at 18. However, the record is clear that the testimony concerning PTSD, consistent with the court's holding regarding CSAAS in *Frenzel,* was used to explain the victim's behavior, not for the purpose of proving the victim's claim of abuse. An explanation of the victim's behavior was necessary at Chapman's trial due to the course the testimony took. During cross examination of the victim, Chapman sought to establish that the victim had created the story about Chapman's abuse, during an argument with her mother, in order to divert the mother's attention from the victim's boyfriend, a young man of whom the mother apparently disapproved. After both mother and daughter testified, the State called its expert, who explained that it was normal for victims of sexual abuse to delay in reporting, thus refuting, at least in part, Chapman's theory that the story had been created to divert attention from the issue of the boyfriend. In addition, the expert explained why the victim would continue to venture to the Chapman's home even after the sexual abuse. Therefore, because the expert's testimony was used to explain the victim's behavior, we reject Chapman's contention that the testimony was used to prove the claim of abuse.

 [¶ 19] Chapman also contends the expert's testimony offered an opinion of guilt and that admission of certain expert testimony should be perceived as error per se. It is well established that Wyoming law prohibits expert testimony as to the guilt of the defendant. *Stephens v. State,* 774 P.2d 60, 68 (Wyo.1989); *Bennett v. State,* 794 P.2d 879, 881 (Wyo.1990); *Whiteplume v. State,* 841

P.2d 1332, 1338 (Wyo.1992); *Curl v. State,* 898 P.2d 369, 373 (Wyo.1995); *Punches v. State,* 944 P.2d 1131, 1135 (Wyo.1997); *Brown v. State,* 953 P.2d 1170, 1182 (Wyo. 1998); *Metzger v. State,* 4 P.3d 901, 905 (Wyo.2000). Without delving into a detailed analysis of the applicable standard of review, *see Dudley v. State,* 951 P.2d 1176, 1178–80 (Wyo.1998); *Newport v. State,* 983 P.2d 1213, 1216 (Wyo.1999) ("error-perse rule applies when the prosecution actually asks a witness to give an opinion as to the accused's guilt"), we are satisfied the record does not support Chapman's contention. Although Chapman points generally to the expert's testimony, he essentially contends the opinion of guilt came from the expert when she testified she was seeing the victim due to "a report of molestation from a family friend." Clearly, this situation does not approach the testimony found in *Stephens v. State,* 774 P.2d at 65–68, where experts opined, after direct solicitation from the prosecuting attorney, that the defendant was the perpetrator of the crime. Neither is there present the inartful questioning found in *Curl,* 898 P.2d at 373, of "Do you think her stepfather, who she previously identified, did that?"—a question that may have resulted in reversal had the expert not "beneficently interrupted." Instead, the expert's testimony here provided foundation for the expert's testimony and only indicates there had been a report of an assault. As such, it is not an opinion of guilt.

[¶ 20] Chapman further contends the expert vouched for the victim's credibility. Again, it is well established in Wyoming that expert testimony vouching for the victim's credibility violates W.R.E. 702. *Frenzel v. State,* 849 P.2d 741, 744 (Wyo. 1993); *Punches v. State,* 944 P.2d 1131 (Wyo. 1997); *Metzger v. State,* 4 P.3d 901, 905 (Wyo.2000); *Montoya v. State,* 822 P.2d 363, 365 (Wyo.1991); *Whiteplume v. State,* 841 P.2d 1332, 1338–40 (Wyo.1992). However, our review of the trial transcripts reveals that the expert testimony here did not violate our rule against vouching. Rather, her testimony focused on general symptoms common to victims of sexual abuse and how those symptoms related to the victim. There was no testimony from the expert that she believed the victim's account of what happened

such as in *Stephens v. State,* 774 P.2d 60, 68 (Wyo.1989). Nor is there testimony like that in *Whiteplume v. State,* 841 P.2d at 1337, where the witness testified that he "made a determination that [the victim] had been raped." *See also Metzger,* 4 P.3d at 906–7 (Prosecutor asked if father believed his daughter, the victim of sexual assault; held to be error but harmless.) Because there was no direct vouching, either solicited or unsolicited, we find no violation of the rule against vouching. While the expert's testimony may have had the incidental effect of supporting the victim's credibility, incidental bolstering of the victim's credibility alone does not make the expert testimony improper. *Frenzel v. State,* 849 P.2d at 746; *Rivera v. State,* 840 P.2d at 939; *Montoya v. State,* 822 P.2d at 365. We find no error, plain or otherwise, in the limited admission of the expert testimony on PTSD. Due to this conclusion, we must also conclude that counsel was not ineffective in failing to object to the testimony.

[¶ 21] We must emphasize that our holding in this case is limited. We simply conclude that the trial court did not err in admitting the expert testimony. We stress, however, that it is with great care that such testimony should be admitted. The pivotal question in determining the admissibility of PTSD testimony in sexual assault cases is the testimony's relevance to the issues in the case; and the pertinent cases vary greatly in the permissible purposes of such testimony. Even where the testimony is relevant, however, other serious concerns can arise. As the Maryland Court of Appeals has written:

> When a trial judge admits PTSD evidence because he believes that the existence of the disorder coupled with the absence of any triggering trauma, other than the evidence of rape, will aid the jury the ruling necessarily carries certain baggage with it. Cross-examination can include not only cross-examining the expert about PTSD in general, but also cross-examining the expert and the prosecutrix about possible causes of the disorder other than the assault charged in the criminal case. In addition, we can foresee cases where the

defendant will seek to counter the State's PTSD evidence with his own expert testimony. That can, in turn, lead to issues concerning compulsory psychiatric examination of the complainant by an expert for the defense. [*Cf. Gale v. State*, 792 P.2d 570, 574–76 (Wyo.1990).] Lurking in the background is the nice question of whether the absence of PTSD is provable by the accused in defense of a rape charge, as tending to prove that there was consent.

*State v. Allewalt*, 517 A.2d at 751.

[¶ 22] Chapman next contends that, because admission of testimony of PTSD is for a limited purpose, the district court should have given a limiting instruction *sua sponte*. The law on the subject of limiting instructions is clear:

A criminal defendant is entitled, upon making a proper request, to have a jury instruction given which sets forth the limited purpose for which the evidence is being admitted. If, however, the defendant does not present an appropriate request, the trial court is not required to give the limiting instruction. Counsel may decide not to request that a limiting instruction be given in order to avoid drawing the jury's attention to the potentially damaging testimony.

*Rigler v. State*, 941 P.2d 734, 738 (Wyo.1997) (citations omitted); *see also Frenzel*, 849 P.2d at 749 ("if requested, a limiting instruction concerning the narrow purpose of CSAAS should be granted.") Clearly, the district court had no duty, absent a request, to fashion a limiting instruction. In addition, the decision to request, or refrain from requesting, a limiting instruction is a tactical decision that this court will not second guess. *See Grainey v. State*, 997 P.2d at 1040–41.

[¶ 23] Chapman also argues that the district court, in its gatekeeping role, is required to make a determination of the admissibility of expert testimony prior to its admission regardless of whether an objection has been made—in effect, arguing that trial courts are always required to hold *sua sponte Daubert* hearings whenever expert testimony is proposed. Such a requirement is clearly unwarranted. First, even where a *Daubert* hearing has been properly requested, trial courts exercise "discretionary au-

thority ... to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted." *Seivewright v. State*, 7 P.3d 24, 30 (Wyo.2000) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 at 1176, 143 L.Ed.2d 238 (1999)). In addition, although we agree that, as gatekeepers of expert testimony, judges must always perform some form of reliability analysis, we decline to "shackle the district court with a mandatory and explicit" reliability proceeding. *Hoult v. Hoult*, 57 F.3d 1, 5 (1st Cir.1995). Instead, like the First Circuit, we "assume that the district court performs such an analysis *sub silencio* throughout the trial with respect to all expert testimony." *Id.* In the case at bar, no *Daubert* hearing was requested. Regardless, because the testimony was properly admitted, there was no error in not holding a *Daubert* hearing.

### Double Jeopardy

[¶ 24] In this claim, Chapman argues that, by sentencing him on two counts arising from the same incident, the district court violated the constitutional prohibition against double jeopardy. He argues that the charges of taking indecent liberties with a minor and third degree sexual assault for the sexual activity occurring in December 1994/January 1995 should have been merged, and he makes the same argument regarding the sexual activity occurring in June 1995.

[¶ 25] In appeals alleging imposition of multiple sentences for a single act, the focus is on those facts proven at trial. *Rouse v. State*, 966 P.2d 967, 970 (Wyo.1998). The ultimate question is whether those facts reveal a single criminal act or multiple distinct offenses against the victim. *Id.* Where the acts required for the commission of one offense are a necessary and indispensable precursor to commission of a second offense, the offenses merge for purposes of sentencing. *Id.* Such merger is mandatory where the second offense cannot be committed absent commission of the first offense.

[¶ 26] In the case at bar, evidence was presented that on January 1, 1995, Chapman fondled the victim's breast under her shirt

and made her touch his genitals. These acts constitute indecent liberties. On the same day, he performed cunnilingus on the victim. This act constitutes third degree sexual assault. *See* Wyo.Stat.Ann. § 6–2–304[3] and § 6–2–301(a)(vii)(B). As for the June 1995 sexual activity, the victim testified there was more oral sex, which again constituted third degree sexual assault. The indecent liberties charge from this date was supported by evidence that Chapman again had the victim manipulate his genitals. The record thus shows that Chapman's convictions were for separate and distinct crimes. Because proof of different facts was required to establish the elements of each crime, cumulative punishment was appropriate. Therefore, Chapman's sentences do not violate the double jeopardy clause.

### Jury Instructions

 [¶ 27] In presenting this argument, Chapman first contends that the jury was not properly instructed on the elements of the offense of indecent liberties with a minor. He also claims the jury was not properly instructed on the offense of fourth degree sexual assault, an offense Chapman perceives as a lesser included offense of indecent liberties. No objection was made to the given instructions, and no additional instructions were offered to address these alleged problems.

[¶ 28] The jury was instructed that, to find Chapman guilty of the crime of indecent liberties with a minor, it must find that he knowingly caused or encouraged a child to commit with him any immoral or indecent act. Chapman now argues that the district court failed to instruct on an essential element of the crime of indecent liberties. Relying on *Pierson v. State*, 956 P.2d 1119, 1125–26 (Wyo.1998), he argues that the offense of indecent liberties now requires more than "mere" sexual contact with someone under 18 and that the jury should have been

instructed on this claimed essential element. In *Pierson*, at 1125–26, this court wrote:

> In defining the term "indecent liberties," we rely on the "common sense of society." *Sorenson*, 604 P.2d at 1034. As the members of society who will exercise that common sense, the jury must be allowed to consider the totality of the circumstances relating to the culpability of the defendant's conduct. This includes whether the conduct was consensual in those cases where the minor was legally old enough to give an informed consent under Wyo.Stat. § 6–2–304. However, the "consent" must also be considered in light of the facts relevant to the victim's ability, in fact, to give an informed consent and the defendant's actions to secure the consent of the minor. Such circumstances include, but are not limited to, the victim's relative maturity; experience; whether the minor is emancipated; the extent of parental involvement in the minor's decisions; and evidence of the defendant's manipulation or coercion of the minor.

Clearly, Chapman's reliance on *Pierson* is misplaced. First, Chapman's thirteen-year-old victim was not a minor who "was legally old enough to give an informed consent under Wyo.Stat. § 6–2–304," and any claim that the jury should have been instructed about the circumstances surrounding "consent" is not well founded. Second, consistent with *Pierson*, we find nothing in the district court's instructions that prevented the jury from considering the totality of the circumstances or from using its common sense in reaching its decision on the indecent liberties charges. Chapman has not demonstrated that the jury was improperly instructed on the offense of indecent liberties, and we cannot find counsel ineffective on this ground.

 [¶ 29] In regard to the lesser included offense argument, this court follows the *Blockburger* "statutory elements test" in

---

**3.** Prior to July 1, 1997, Wyo.Stat.Ann. § 6–2–304, Sexual assault in the third degree, provided:

(a) Except under circumstances constituting a violation of W.S. 14–3–105, an actor commits sexual assault in the third degree if:

(i) The actor is at least four (4) years older than the victim and who inflicts sexual intru-

sion on a victim under the age of sixteen (16) years; or

(ii) The actor is an adult and subjects a victim under the age of twelve (12) years to sexual contact without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim.

determining whether one offense is a lesser included offense of another. *State v. Keffer,* 860 P.2d 1118, 1133–34 (Wyo.1993); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *State v. Keffer,* 860 P.2d at 1130 (quoting *Blockburger v. United States,* 284 U.S. at 304, 52 S.Ct. at 182); *McDermott v. State,* 870 P.2d 339, 345 (Wyo.1994). In other words, one offense is not necessarily included in another unless the elements of the lesser offense are a subset of the elements of the charged offense. *Keffer,* at 1134. Where the proposed lesser included offense requires proof of an element not required for the greater offense, no instruction need be given. *Id.; Jackson v. State,* 891 P.2d 70, 74 (Wyo. 1995).

[¶ 30] Had Chapman requested an instruction on fourth degree sexual assault, the trial court would have been required to determine whether the elements of that statute constituted a subset of indecent liberties with a minor. An indecent liberties conviction requires a child victim under the age of 18. Wyo.Stat. § 14–3–105.[4] Fourth degree sexual assault[5] (under the obsolete statute applicable to this case) does not require a child victim, and the indecent liberties statute therefore contains an element not included in the fourth degree sexual assault statute. Conversely, fourth degree sexual assault requires sexual contact under any of the circumstances of W.S. 6–2–302(a)(i) through (iv) or 6–2–303(a)(i) through (vi). However, the indecent liberties statute does not require

any of the defined circumstances. Therefore, each statute requires an element not required by the other. Clearly, fourth degree sexual assault is not a lesser included offense of indecent liberties, and trial counsel cannot be faulted for failing to request instructions in this regard.

### *Hearing Impairment*

 [¶ 31] Chapman claims that, because he suffers from an 80 percent loss of hearing, he could not hear and understand the trial proceedings and, thus, he was denied his constitutional rights to confrontation and to be present at trial. Without going into an extended and unnecessary constitutional analysis, suffice it to say that nothing in the record demonstrates that Chapman could not hear what was going on. During trial, neither Chapman nor his trial counsel indicated that Chapman was not hearing testimony; defense counsel asked the judge to instruct the victim to move closer to the microphones to be heard; and the record indicates that the courtroom had an amplified sound system. In addition, during an in-chambers discussion among Chapman, his attorney, and the district court judge regarding Chapman's decision not to testify, Chapman carried on a lengthy conversation with the district court and his attorney, and he even indicated he could hear witness questioning and testimony. Thus, nothing in this record leads this court to conclude Chapman was unable to hear. *Cf. Sorensen v. State,* 6 P.3d 657, 661–62 (Wyo.2000) (Nothing in the record indicated that juror was unable to hear the evidence.) Based on this record, Chapman's claim must fail both as a substantive matter and as a matter of ineffective assistance of counsel.

---

4. The version of the indecent liberties statute, Wyo.Stat. § 14–3–105, applicable to this case provides:

 (a) Any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony, and upon conviction shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.

 (b) As used in this section, "child" means a person under the age of eighteen (18) years.

5. Wyo.Stat. § 6–2–305 provides:

 Except under circumstances constituting a violation of W.S. 14–3–105, any actor who subjects a victim to sexual contact under any of the circumstances of W.S. 6–2–302(a)(i) through (iv) or 6–2–303(a)(i) through (vi) without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim commits sexual assault in the fourth degree.

[¶ 32] The judgment and sentence entered in the district court is affirmed.